STATE OF NORTH CAROLINA v. GEORGE DOUGLAS LARRIMORE

No. 241A93

(Filed 5 May 1995)

1. **Constitutional Law § 338 (NCI4th); Jury § 248 (NCI4th)— first-degree murder and conspiracy to murder—jury selection—peremptory challenges—no violation of Sixth Amendment**

   A conspiracy and first-degree murder defendant's Sixth Amendment right to a trial by jury was not violated by the allowance of peremptory challenges by the State.

   **Am Jur 2d, Criminal Law §§ 672 et seq., 890 et seq.; Jury § 234.**

2. **Jury § 260 (NCI4th)— first-degree murder and conspiracy—jury selection—peremptory challenges—race neutral reasons**

   The trial court did not err in its findings and conclusions that the prosecutor's use of peremptory challenges was racially neutral in denying defendant's claim that his equal protection rights were violated by the use of peremptory challenges in a prosecution for conspiracy and first-degree murder where the prosecutor indicated in the record that the first of the two black jurors challenged was not a registered voter in Brunswick County, where the trial was held; the prosecutor perceived some reluctance in the juror's answer to a question regarding fairness; and the juror thought that he had seen defendant somewhere. As to the second prospective juror, she was single, she had never held a job, and she was close to the same age as the defendant's son, who was a potential witness for the defendant.

   **Am Jur 2d, Jury § 244.**

   **Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.**

   **Use of peremptory challenges to exclude ethnic and racial groups, other than black Americans, from criminal jury—post-*Batson* state cases. 20 ALR5th 398.**

Use of peremptory challenges to exclude ethnic and racial groups, other than black Americans, from criminal jury—post-*Batson* federal cases. 110 ALR Fed. 690.

**3. Criminal Law § 836 (NCI4th)— conspiracy and first-degree murder—interested witness instruction—no plain error**

There was no plain error in a prosecution for conspiracy and first-degree murder from an instruction given during jury selection on interested witnesses in explanation of a line of questions posed by the prosecution. The instruction correctly informed the jury that, should it determine that the evidence is believable, the evidence then takes on the same tenor as all other credible evidence before the jury and did not require the jury to assign a certain weight to the evidence.

**Am Jur 2d, Trial § 1412.**

**4. Criminal Law § 411 (NCI4th)— conspiracy and first-degree murder—jury selection—statement by prosecutor—not an endorsement of witness's credibility**

A prosecutor's comment during jury selection for a conspiracy and first-degree murder trial concerning the use of testimony by a witness who had received plea concessions in exchange for truthful testimony did not amount to a personal endorsement of the credibility of the witness where the remark was a single comment containing a direct quote from the language of the plea agreement.

**Am Jur 2d, Trial § 566.**

**5. Constitutional Law § 342 (NCI4th)— conspiracy and first-degree murder—bench conferences—defendant not present—no error**

The trial court did not err in a conspiracy and first-degree murder prosecution by conducting six unrecorded bench conferences not attended by defendant where, although a question was rephrased following one of the conferences, an examination of the entire line of questioning and events prior to and following the conference indicates that the outcome of the conference was beneficial to the defendant; while defendant contends that a conference pertaining to a State's rebuttal witness was prejudicial, there is no indication in the record that the conference in any way involved the testimony of that witness; and the other conferences cited by the defendant were clearly held for administrative pur-

poses and there was no showing that the defendant's presence was necessary.

**Am Jur 2d, Criminal Law §§ 692 et seq., 901 et seq.**

**Exclusion or absence of defendant, pending trial of criminal case, from courtroom, or from conference between court and attorneys, during argument on question of law. 85 ALR2d 1111.**

**Right of accused to be present at suppression hearing or at other hearing or conference between court and attorneys concerning evidentiary questions. 23 ALR4th 955.**

**6. Criminal Law § 479 (NCI4th)— conspiracy and first-degree murder—jury instructions at recess**

The trial court did not err in a prosecution for conspiracy and first-degree murder in the instructions it gave the jury at each recess where the instruction at the first recess omitted the media element, but the overall context made this a *de minimis* oversight; the instruction at the end of the first day of jury selection did not precisely follow the language of the statute but contained all of the elements in the statute and was sufficiently clear to fulfill the intent of the statute; the court gave a formal pretrial instruction to the full jury after the panel was seated and prior to the beginning of the trial; and from that instruction to the end of the trial the court consistently gave an abbreviated instruction which reminded the jurors to keep an open mind and not to discuss the case with anyone or to allow anyone to discuss it with them. N.C.G.S. § 15A-1236(a).

**Am Jur 2d, Trial §§ 1562, 1564.**

**7. Evidence and Witnesses § 1694 (NCI4th)— conspiracy and first-degree murder—photograph of victim—admissible**

The trial court did not err in a prosecution for conspiracy and first-degree murder by admitting a photograph of the victim where defendant contended that this photograph was excessively bloody and added no new information for the jury, but the photograph served to illustrate the coroner's testimony, specifically the visible wounds on the decedent's body. N.C.G.S. § 8C-1, Rule 403.

**Am Jur 2d, Homicide §§ 417 et seq.**

**Admissibility in evidence of enlarged photographs or photostatic copies. 72 ALR2d 308.**

**8. Evidence and Witnesses § 1715 (NCI4th)— conspiracy and first-degree murder—photograph of weapon—like weapon used in crime**

There was no error in a prosecution for conspiracy and first-degree murder in the admission of a photograph of a pistol purported to be identical to the pistol used in the murder. Although defendant asserted that the photograph constituted irrelevant evidence, the unique shape of certain unrecovered parts of the murder weapon made the jury's understanding of the weapon important to the State's case and testimony affirming that the weapon depicted in the photograph was similar to the one received from defendant was sufficient for introducing the photograph for illustrative purposes.

**Am Jur 2d, Homicide § 416.**

**9. Evidence and Witnesses § 116 (NCI4th)— conspiracy and first-degree murder—guilt of another—evidence of motive only**

The trial court did not err in a prosecution for conspiracy and first-degree murder by excluding evidence that decedent's estranged wife had a motive to kill her husband where the evidence offered by defendant pointed solely to motive and was not inconsistent with defendant's guilt, and defendant was able to present relevant evidence in support of his theory through the testimony of other witnesses.

**Am Jur 2d, Evidence § 587.**

**10. Evidence and Witnesses § 3094 (NCI4th)— conspiracy and first-degree murder—impeachment of witness—testimony at prior trial**

The trial court did not err and defendant's confrontation rights were not violated in a prosecution for conspiracy and murder where defendant utilized testimony to bolster his theory of someone else's involvement in the plot to kill the victim and the State used the witness's testimony from a prior trial in rebuttal. There can be little question that the evidence was material when it formed the very foundation of the defense and defendant knew of the existence of this statement and of the discrepancies between the prior testimony and the testimony at this trial.

**Am Jur 2d, Witnesses § 941.**

**11. Evidence and Witnesses §§ 1113, 3090 (NCI4th)— conspiracy and first-degree murder—prior inconsistent statement within hearsay—admissible**

The trial court did not err in a prosecution for conspiracy and first-degree murder by admitting a detective's testimony that another person, McPherson, had related defendant's statements concerning a truck used in the crime which may or may not have had a broken window. The testimony elicited from the detective as to what McPherson told him was admissible as a prior inconsistent statement to impeach McPherson, who had testified that a window in the truck had not been broken and the testimony as to what the defendant said in regard to the truck was admissible as an exception to the hearsay rule as an admission of a party. The fact that this hearsay statement by the defendant was contained within a hearsay statement by McPherson does not affect its admissibility because both statements were admissible. N.C.G.S. § 8C-1, Rule 801(d) (1992).

**Am Jur 2d, Witnesses §§ 942 et seq.**

**12. Evidence and Witnesses § 665 (NCI4th)— conspiracy and first-degree murder—objection to testimony—withdrawn— not preserved for appeal**

A defendant who abandoned a challenged question during a conspiracy and first-degree murder prosecution did not preserve the issue for appeal.

**Am Jur 2d, Appeal and Error § 562.**

**13. Evidence and Witnesses § 3033 (NCI4th)— conspiracy and first-degree murder—cross-examination of defendant— affidavit of indigency—truthfulness**

The trial court did not err in a prosecution for conspiracy and first-degree murder by allowing the State to cross-examine defendant regarding his affidavit of indigency. The trial court conducted a *voir dire* hearing, evaluated the evidence, limited the scope of the line of questioning, and then exercised its discretion in admitting a limited portion of the evidence. The limited nature of the questions permitted by the trial court fall within the parameters of N.C.G.S. § 8C-1, Rule 608(b). Regarding the balancing test found in N.C.G.S. § 8C-1, Rule 403, the trial court obviously weighed the risk of prejudice against the information already known to the jury and concluded that the probative value of the

limited questions outweighed the risk of prejudice to the defendant.

**Am Jur 2d, Witnesses §§ 964-966.**

**14. Evidence and Witnesses § 2966 (NCI4th)— conspiracy and first-degree murder—State's witness—threat by boyfriend and defendant's former employee—admissible**

The trial court did not err in a prosecution for conspiracy and first-degree murder by permitting a State's rebuttal witness to testify on redirect that she had been threatened by her boyfriend, a former employee of defendant, should she testify. The witness had presented an extremely flexible story that changed with each phase of the examination; once the witness's credibility was placed at issue, the State properly sought to provide an explanation for the changes and defendant has not shown that he was prejudiced.

**Am Jur 2d, Witnesses § 884.**

**15. Evidence and Witnesses § 2973 (NCI4th)— conspiracy and first-degree murder—State's witness threatened— past assaults—admissible**

The trial court did not err in a prosecution for conspiracy and first-degree murder by permitting limited evidence concerning past assaults upon a witness by her boyfriend, a former employee of defendant, where the witness testified that she had been threatened by her boyfriend should she testify. Where the witness has been the subject of past acts of violence and thereby has reason to fear another individual, those past acts are relevant to the issue of the witness's character for truthfulness or untruthfulness. Furthermore, defendant opened the door for this line of questioning by eliciting answers from the witness indicating a close and loving relationship between the witness and her boyfriend.

**Am Jur 2d, Witnesses §§ 895 et seq.**

**16. Evidence and Witnesses § 981 (NCI4th)— conspiracy and first-degree murder—prior testimony of absent witnesses—instructions**

There was no plain error in a prosecution for conspiracy and first-degree murder where the court instructed the jury prior to the reading into evidence of the prior testimony of two absent

elderly defense witnesses that this testimony should be treated no differently from other testimony. Although defendant contended that this was error because there was also accomplice and interested witness testimony which the jury was instructed to scrutinize, the jurors would have had no difficulty understanding from the instruction that they were to treat the testimony as they would the testimony of ordinary witnesses. This instruction benefitted the defendant because the jury otherwise would have a tendency to give less weight to the testimony in the absence of the witnesses.

**Am Jur 2d, Evidence §§ 890 et seq.; Homicide § 393.**

**Admissibility or use in criminal trial of testimony given at preliminary proceeding by witness not available at trial. 38 ALR4th 378.**

17. **Criminal Law § 400 (NCI4th)— conspiracy and first-degree murder—absent witness—comment by judge—no plain error**

There was no error and no plain error in a prosecution for conspiracy and first-degree murder in the trial court's comment made in the presence of the jury in reaction to a delay caused by the temporary absence of a defense witness. Although the comments of the judge were less than exemplary, the judge edited his own comments, the statements of the judge reflected his efforts to maintain progress and proper decorum, and defendant failed to show prejudice.

**Am Jur 2d, Trial § 279.**

18. **Conspiracy § 31 (NCI4th)— conspiracy to murder—sufficiency of evidence—meeting of the minds**

The trial court did not err in a prosecution for conspiracy to commit first-degree murder by denying defendant's motions to dismiss due to insufficient evidence where defendant contended that there was insufficient evidence of a meeting of the minds between the conspirators but defendant's coconspirator indicated that defendant proposed the conspiracy and that he agreed by his actions, and there was ample direct and circumstantial evidence through the testimony of the coconspirator, the corroborating testimony of others, and the physical evidence.

**Am Jur 2d, Conspiracy § 29.**

**19. Conspiracy § 13 (NCI4th)— conspiracy to murder— Wharton's Rule—no application**

Even if Wharton's Rule (which is used to determine whether a legislature intended to allow prosecution for conspiracy to commit a crime as well as for commission of the crime) were a part of the law of North Carolina, it would have no application in this case because murder does not require more than one person to commit and the immediate consequences of the crime do not fall only on the persons who commit it.

**Am Jur 2d, Conspiracy §§ 1, 2.**

**20. Homicide § 372 (NCI4th)— accessory to first-degree murder—guilty plea by principal to second-degree murder**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree murder where defendant was tried as an accessory before the fact after the principal had pled guilty to second-degree murder. *State v. Arnold*, 329 N.C. 128, holds that an accessory before the fact may be tried for first-degree murder although the principal has pled guilty to second-degree murder.

**Am Jur 2d, Homicide § 445.**

**21. Homicide § 552 (NCI4th)— first-degree murder—second-degree murder not submitted—no error**

There was no error in a prosecution for first-degree murder in not submitting second-degree murder as a possible verdict where the State's evidence tended to establish each and every element of first-degree murder, including premeditation and deliberation; the defendant denied any involvement in the crime; the jury had to find the defendant guilty of first-degree murder if it believed the State's evidence, and had to find defendant not guilty if it believed the defendant's evidence; and the evidence of defendant's consumption of alcoholic beverages did not rise to such a level that the jury could find that defendant was incapable of premeditating and deliberating murder.

**Am Jur 2d, Homicide §§ 525 et seq.**

**22. Criminal Law § 468 (NCI4th)— conspiracy and first-degree murder—prosecutor's argument—hyperbole—no error**

There was no error and no gross impropriety in a prosecution for conspiracy and first-degree murder in the prosecutor's arguments which referred to a contention by defendant.

Am Jur 2d, Trial §§ 632 et seq.

23. **Criminal Law § 447 (NCI4th)— conspiracy and first-degree murder—prosecutor's argument—position of body—not invoking sympathy for victim**

There was no error in a prosecution for conspiracy and first-degree murder where defendant contended that the prosecutor's argument improperly sought to invoke sympathy for the victim but in context the prosecutor was arguing that the position of the body was explained by the circumstances in evidence and did not support the defense's theory of the case.

Am Jur 2d, Trial §§ 648 et seq.

24. **Criminal Law § 439 (NCI4th)— conspiracy and first-degree murder—prosecutor's argument—interested and uninterested witnesses**

There was no gross impropriety in a prosecution for conspiracy and first-degree murder where defendant contended that the prosecutor in his argument improperly attempted to entice certain jurors into identifying with certain prosecution witnesses, but, even though the prosecutor singled out certain jurors at times, he spoke to the jury collectively in making his point concerning the distinction between interested witnesses and noninterested witnesses.

Am Jur 2d, Trial §§ 692.

25. **Criminal Law § 447 (NCI4th)— conspiracy and first-degree murder—prosecutor's argument—sympathy for victim's family**

There was no error in a prosecution for conspiracy and first-degree murder in the prosecutor's reference in his argument to the victim's family.

Am Jur 2d, Trial §§ 648 et seq., 664 et seq.

**Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.**

**26. Criminal Law § 442 (NCI4th)— conspiracy and first-degree murder—prosecutor's argument—jury as conscience of the community**

There was no error in a prosecution for conspiracy and first-degree murder in the prosecutor's argument that the jury is the conscience of the community.

**Am Jur 2d, Trial §§ 567 et seq.**

**27. Criminal Law § 433 (NCI4th)— conspiracy and first-degree murder—prosecutor's argument—defendant as evil man**

There was no gross impropriety in a prosecution for conspiracy and first-degree murder where the prosecutor in his closing argument described defendant as the quintessential evil and one of the most dangerous men in the state.

**Am Jur 2d, Trial §§ 681, 682.**

**28. Criminal Law § 461 (NCI4th)— conspiracy and first-degree murder—prosecutor's argument—facts not in evidence**

There was no error in a prosecution for conspiracy and first-degree murder where the prosecutor argued that defendant had been seen in possession of the murder weapon and defendant contended on appeal that this was arguing facts not in evidence. The evidence at trial was that defendant was in possession of and handling a pistol matching the description of the murder weapon; this evidence was sufficient to support the reasonable inference that the weapon seen in defendant's possession was the same weapon that the defendant later provided a coconspirator for the purpose of committing the murder.

**Am Jur 2d, Trial §§ 609 et seq.**

**29. Criminal Law § 439 (NCI4th)— conspiracy and first-degree murder—prosecutor's argument—credibility of witness**

There was no error in a prosecution for conspiracy and first-degree murder in an argument by the prosecutor that an officer had "the greatest degree of believability" where the prosecutor was responding to assertions made by the defendant. The prosecutor is allowed to respond to arguments made by defense counsel and restore the credibility of a witness who has been attacked in defendant's closing argument.

**Am Jur 2d, Trial § 702.**

**Propriety and prejudicial effect of comments by counsel vouching for credibility of witness-state cases. 45 ALR4th 602.**

**30. Criminal Law § 439 (NCI4th)— conspiracy and first-degree murder—prosecutor's argument—credibility of witness**

There was no error in a prosecution for conspiracy and first-degree murder where the prosecutor argued that a defense witness was not worthy of consideration or belief.

**Am Jur 2d, Trial §§ 692 et seq.**

**Propriety and prejudicial effect of counsel's negative characterization or description of witness during summation of criminal trial—modern cases. 88 ALR4th 209.**

**31. Criminal Law § 439 (NCI4th)— conspiracy and first-degree murder—prosecutor's argument—credibility of witness**

There was no error in a prosecution for conspiracy and first-degree murder in the prosecutor's argument concerning the testimony of the wife of a coconspirator. The prosecutor repeatedly encouraged the jury to weigh the witness's credibility based upon the jurors' observations; only if the jury determines that this witness is credible does the prosecutor contend that the weight of that testimony should be the same as other credible evidence.

**Am Jur 2d, Trial §§ 692 et seq.**

**Propriety and prejudicial effect of counsel's negative characterization or description of witness during summation of criminal trial—modern cases. 88 ALR4th 209.**

**32. Criminal Law § 461 (NCI4th)— conspiracy and first-degree murder—defendant's argument—facts not in evidence—not a reasonable inference**

There was no error in a prosecution for conspiracy and first-degree murder where the court sustained an objection to a portion of defendant's closing argument and instructed defense counsel to only argue facts in evidence. Although defendant asserts that the argument that a witness saw Babe Godwin and defendant's coconspirator riding around in Godwin's truck and carrying a gun was a reasonable inference from testimony that the witness had seen a Babe Godwin and a black male riding

around in Godwin's truck and carrying a gun, the witness was unable to identify the black male and defendant should not have referred to the black male as the coconspirator.

**Am Jur 2d, Trial §§ 609 et seq.**

**33. Criminal Law § 819 (NCI4th)— conspiracy and first-degree murder—interested witness instruction**

There was no error in a prosecution for conspiracy and first-degree murder where the court instructed the jurors that if they found one or more witnesses were interested in the outcome, they could take this interest into account and would treat such testimony the same as any other believable evidence if they believed such testimony in whole or in part, or where the court instructed the jurors that there was evidence that a particular witness was an accomplice and would be considered an interested witness whose testimony would be considered with the greatest care and caution, but if after doing so they believed the testimony in whole or in part they would treat the evidence as they would any other believable testimony.

**Am Jur 2d, Trial § 1412.**

**34. Criminal Law § 817 (NCI4th)— conspiracy and first-degree murder—instructions—testimony from prior trial**

There was no error in a prosecution for conspiracy and first-degree murder in the court's instruction that statements in prior proceedings or to other persons should not be considered as evidence of the truth but as corroboration or impeachment. Although defendant contended that the court with this instruction told the jury not to consider the testimony of two elderly alibi witnesses from the first trial whose testimony had been read into evidence at the second trial because they were in poor health, the court instructed the jury as to how it was to consider the testimony of the absent witnesses when it was introduced, these witnesses were not mentioned in this part of the charge, and the jury did not have trouble discerning that this part of the charge did not apply to these absent witnesses.

**Am Jur 2d, Trial §§ 1406 et seq.; Witnesses § 941.**

**35. Criminal Law § 775 (NCI4th)— conspiracy and first-degree murder—instructions—voluntary intoxication**

The trial court did not err in a prosecution for conspiracy and first-degree murder by not giving an instruction on voluntary

intoxication where defendant did not make the requisite showing that either defendant or the accomplice was utterly incapable of forming the requisite intent. Moreover, defendant's contention in this argument that the trial court committed constitutional error in its instruction on guilt under the theory of accessory before the fact in that the instruction violated his due process rights was rejected.

**Am Jur 2d, Trial §§ 1279, 1280.**

**36. Homicide § 476 (NCI4th)— first-degree murder as accessory before the fact—instructions on intent—sufficient**

The trial court did not err in a prosecution for first-degree murder in its final mandate where defendant contended that the court erred by failing to charge that either defendant or his accomplice must possess a specific intent to kill in order to convict defendant of first-degree murder under the theory of accessory before the fact. The court correctly charged the jury regarding the elements of first-degree murder as they applied to the accomplice, specifically including the requirement that there be proof beyond a reasonable doubt that he possessed the specific intent to kill the victim; the court correctly set out the necessary elements for conviction based upon the theory of being an accessory before the fact to first-degree murder; and the court charged that the killing had to be intentional when it charged in its final mandate that the jury had to be satisfied beyond a reasonable doubt that the killing was with premeditation and deliberation.

**Am Jur 2d, Homicide § 501.**

**Modern status of the rules requiring malice "aforethought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.**

**37. Conspiracy § 18 (NCI4th)— murder and conspiracy to murder—no error in submitting both**

There was no plain error in submitting both first-degree murder and conspiracy to murder to the jury.

**Am Jur 2d, Conspiracy § 5-9.**

**38. Criminal Law § 1214 (NCI4th)— conspiracy to murder— sentencing—nonstatutory mitigating factors—plea agreement and sentencing of coconspirator**

The trial court did not abuse its discretion when sentencing defendant for conspiracy to commit first-degree murder by not finding as a nonstatutory mitigating factor the plea agreement and sentencing of defendant's coconspirator. The finding of a nonstatutory mitigating factor is within the discretion of the sentencing judge.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**39. Criminal Law § 1135 (NCI4th)— conspiracy to murder and first-degree murder—sentencing—aggravating factors— inducement of others—position of leadership or dominance**

The trial court did not err in a prosecution for conspiracy to murder by finding the aggravating factors that defendant induced others to participate in the commission of the offense and that defendant occupied a position of leadership or dominance in the commission of the offense where there was ample independent evidence upon which the court could base its finding of each of these factors. While some evidence supporting each of the factors and elements of the crime may overlap, discrete evidence exists to support each factor.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**40. Criminal Law § 1293 (NCI4th)— accessory to murder— sentencing—basis of verdict not specified—not prejudicial**

There was no prejudice where a defendant received a Class A rather than a Class B life sentence for being an accessory before the fact to first-degree murder but there was nothing in the record as to whether the jury based its verdict solely on the uncorroborated testimony of a coconspirator or considered as well corroborating evidence presented at trial. The single distinction between a Class A and a Class B felony before 1 October 1994 is that a Class A felony is subject to capital punishment; no distinction is made between a Class A and a Class B life sentence either in sentencing or in the manner in which the Department of Correction handles an individual. N.C.G.S. § 14-5.2.

**Am Jur 2d, Criminal Law §§ 535 et seq.**

**STATE v. LARRIMORE**

[340 N.C. 119 (1995)]

Justices LAKE and ORR did not participate in the consideration or decision of this case.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a sentence of life imprisonment entered by Stephens (Donald W.), J., at the 2 November 1992 Criminal Session of Superior Court, Brunswick County, upon a jury verdict of guilty of first-degree murder in a case in which defendant was tried capitally. The defendant's motion to bypass the Court of Appeals as to an additional judgment imposed for conspiracy to commit murder was allowed 23 June 1993. Heard in the Supreme Court 12 September 1994.

The defendant was charged in Columbus County with conspiracy to commit murder and first-degree murder. At the first trial, the jury could not reach a verdict and a mistrial was declared. The case was then moved to Brunswick County for trial.

The evidence at the second trial showed the defendant hired Daniel Ray McMillian to kill Cecil Edwards. McMillian accomplished the murder by knocking on Mr. Edwards' door and shooting him when Mr. Edwards responded to the knock. McMillian pled guilty to second-degree murder and conspiracy to commit murder. He was sentenced to life in prison plus thirty years. McMillian testified for the State.

The defendant was convicted of first-degree murder and conspiracy to commit murder. The court ruled that there was not sufficient evidence of any aggravating circumstance to submit a death sentence to the jury. The defendant was sentenced to life in prison for murder and thirty years in prison for conspiracy, to be served consecutively. The defendant appealed.

*Michael F. Easley, Attorney General, by Mary Jill Ledford, Assistant Attorney General, for the State.*

*Thomas F. Loflin III for defendant-appellant.*

WEBB, Justice.

[1] The defendant first assigns error to the allowance of peremptory challenges to two black jurors. He contends that by the allowance of the challenges, there was impermissible racial discrimination in the selection of the jury. *Powers v. Ohio*, 499 U.S. 400, 113 L. Ed. 2d 411 (1991); *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986). The defendant contends that his equal protection rights under the

Fourteenth Amendment and his right to an impartial jury under the Sixth Amendment to the Constitution of the United States were violated by the allowance of these peremptory challenges.

The Supreme Court of the United States held in *Holland v. Illinois*, 493 U.S. 474, 107 L. Ed. 2d 905 (1990), that a defendant's Sixth Amendment right to a trial by jury is not violated by the allowance of peremptory challenges by the State. There is no merit in this argument by the defendant that his Sixth Amendment rights were infringed.

[2] As to the defendant's claim that his equal protection rights were violated by the use of the peremptory challenges, the prosecuting attorney placed in the record his reasons for the challenges. He believed the first of the two jurors was not a registered voter in Brunswick County, he perceived "some reluctance" in his "no" answer to a question regarding fairness, and the prospective juror indicated that "he thought he had seen the Defendant's face somewhere." As to the second prospective juror, she was single; she had never held a job; and she was close to the same age as the defendant's son, who was a potential witness for the defendant. The court found that these rationales were "reasonable and acceptable, and are race neutral."

According, as we must, great deference to the findings of the trial court, we cannot find error in its findings of fact and conclusions. *State v. Sexton*, 336 N.C. 321, 444 S.E.2d 879, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 429 (1994); *State v. Thomas*, 329 N.C. 423, 407 S.E.2d 141 (1991). For examples of peremptory challenges which were deemed acceptable under *Batson*, see *State v. Jackson*, 322 N.C. 251, 255, 368 S.E.2d 838, 840 (1988), *cert. denied*, 490 U.S. 1110, 104 L. Ed. 2d 1027 (1989).

This assignment of error is overruled.

[3] The defendant, in his next assignment of error, contends that the trial court erred in instructing the jury regarding the testimony of interested witnesses. The defendant did not object at trial, so we must review this contention under the plain error standard of review. The trial court gave the questioned instruction *ex mero motu* in explanation of a line of questions posed by the prosecution during the jury *voir dire*. The trial court instructed as follows:

The law of this State permits the State to grant immunity to someone who has committed a crime, and allow them not to be prosecuted in exchange for their cooperation, to testify as a wit-

ness for the State. Or the State can make an agreement with a potential witness for a sentence concession, that is, to reduce in some way either the charge or the sentence that's going to be imposed in that person's case in exchange for that person's cooperation and testimony.

If such a person testifies, and there is some concession that the State has made in exchange for that testimony, the jury is required to examine that person's testimony with the greatest of care and caution to determine whether or not you will believe or disbelieve that testimony.

However, you are required to consider it. And if after examining it you—you believe all, or part of the testimony, then you would treat what you believe *the same* as any other believable evidence in the case.

Is there anybody who—who cannot follow those requirements of the law as a juror if participating in this trial? Again I say, you are required to consider that testimony, and you *are required to accept* what you believe *the same as* any other believable evidence. If you choose—if you believe that testimony, after giving it great care and caution in light of the concessions that the State has made.

(Emphasis added.) The defendant contends the instructions require acceptance of such testimony and in so doing, invade the province of the jury. We disagree. The instruction is a correct statement of the law. *State v. Martin*, 294 N.C. 253, 261, 240 S.E.2d 415, 421 (1978). It was not error to give it. It does not require the jury to assign a certain weight to the evidence, but rather informs the jury that should it determine the evidence is believable, then the evidence takes on the same tenor as all other credible evidence before the jury. This assignment of error is overruled.

[4] The defendant assigns as error a comment made early in the jury selection process by the prosecutor, which the defendant asserts amounted to a personal endorsement of the credibility of Ray McMillian. While questioning a panel of prospective jurors, the prosecutor asked:

Will the State's reliance on the testimony of a confessed murderer, who has received some plea concessions in exchange for his *truthful testimony* at this trial, will the State's reliance on that

cause any of you any problems in listening to his testimony, and listening—and weighing it as you weigh all the testimony?

(Emphasis added.) The defendant contends the use of the phrase "truthful testimony" constitutes an impermissible personal voucher of the truthfulness of Mr. McMillian. The defendant relies upon *United States v. Smith*, 962 F.2d 923 (9th Cir. 1992), as the authority for his position. In *Smith*, the circumstances surrounding the questioned argument were much more egregious. The prosecutor's closing argument in *Smith* included repeated personal assurances to the jury through direct comment and by inference that the testimony of a crucial witness was true. The court held that "[t]he prosecutor's recurrent harping on the issue of his special role was clearly improper. The repeated comments also demonstrate that the errors were not inadvertent." *Id.* at 935. We do not find *Smith* applicable to the instant case.

Here, the prosecutor made a single comment which contained a direct quote from the language of the plea agreement. We do not believe the prosecuting attorney by doing so made a personal endorsement of the truthfulness of Ray McMillian. This was left to the jury. This assignment of error is overruled.

[5] The defendant next assigns as error in his capital trial the trial court's conducting of six unrecorded bench conferences not attended by the defendant. The defendant did not object at trial. Of the six challenged conferences, a review of the record indicates that three were held at the request of the defendant's counsel, two at the court's request not in response to any objection, and one at the court's request in response to an objection by the State. Counsel for the defendant were present at all conferences. The defendant contends that *State v. Callahan*, 83 N.C. App. 323, 350 S.E.2d 128 (1986), *disc. rev. denied*, 319 N.C. 225, 353 S.E.2d 409 (1987), is controlling. We do not agree. In *Callahan*, the Court of Appeals held that the trial court erred in failing to record the questions and answers in the court's inquiry as to the defendant's understanding of his rights pertaining to proceeding *pro se*. There can be no doubt that such an inquiry necessarily involves the defendant's constitutional rights and therefore must be recorded. We do not find that the conferences at issue in this case rise to the same level.

Questions involving the defendant's unwaivable state constitutional right in capital cases to be present and to have all bench con-

ferences recorded arise frequently. In *State v. Buchanan*, 330 N.C. 202, 410 S.E.2d 832 (1991), we reviewed the issue extensively. In *Buchanan*, this Court concluded:

> Though defendant himself did not attend the conferences in this case, we conclude that the trial court's bench conferences with defense counsel and counsel for the State did not violate defendant's state constitutional right to be present at all stages of his trial. As stated above, defendant was personally present in the courtroom during the conferences. Further, and perhaps more importantly, his actual presence was not negated by the trial court's actions. At each of the conferences defendant was represented by his attorneys. Defendant was able to observe the context of each conference and inquire of his attorneys at any time regarding its substance. Through his attorneys defendant had constructive knowledge of all that transpired. Following the conferences defense counsel had the opportunity and the responsibility to raise for the record any matters to which defendant took exception. At all times defendant had a first-hand source of information as to the matters discussed during a conference. It also is relevant that bench conferences typically concern legal matters with which an accused is likely unfamiliar and incapable of rendering meaningful assistance. Other conferences typically deal with administrative matters that are nonprejudicial to the fairness of defendant's trial. In addition, such conferences do not diminish the public interest associated with defendant's right to presence. Unlike the excusal of prospective jurors following *ex parte* communications, in this case defendant, through his attorneys, had every opportunity to inform the court of his position and to contest any action the court might have taken.

*Id.* at 223, 410 S.E.2d at 844-45; *see State v. Upchurch*, 332 N.C. 439, 455, 421 S.E.2d 577, 586 (1992). In *Upchurch*, we found the fact that the defendant's own counsel requested several unrecorded conferences to be significant. *State v. Upchurch*, 332 N.C. at 456, 421 S.E.2d at 587. Recently, we reiterated our holding in *Buchanan*, stating that "[t]he burden is on the defendant to show the usefulness of his presence at the unrecorded bench conference." *State v. Lee*, 335 N.C. 244, 264, 439 S.E.2d 547, 557 (citing *State v. Buchanan*, 330 N.C. at 223-24, 410 S.E.2d at 845), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 162, *reh'g denied,* —— U.S. ——, 130 L. Ed. 2d 532 (1994).

In the instant case, the defendant contends the failure to involve him in the conference held at the court's request during the cross-

examination of Ray McMillian was especially prejudicial. He asserts that the question following the conference differed from the one asked prior to the conference, and this reflects a significant decision impacting upon his constitutional rights. We disagree. While the question was rephrased, an examination of the entire line of questioning and events in the court prior to and following the conference indicates that the outcome of the conference was beneficial to the defendant. Prior to the conference, the State raised several objections regarding the relevancy of the line of questions. The court indicated just prior to the conference that it was willing to allow the line of questions to proceed to determine the relevance. After the conference, defense counsel rephrased a question but was otherwise permitted to take the line of questioning to its logical conclusion. In so doing, counsel laid the groundwork for an impeaching inference that McMillian was involved in gang activity in prison.

The second conference the defendant specifically cites as being prejudicial occurred at the conclusion of the testimony of Tommy Hobbs. The defendant asserts the conference in actuality pertained to the next witness in the State's rebuttal evidence, Brenda Kirby. Since Ms. Kirby's testimony was damaging to the defendant, he asserts that he was prejudiced by not attending the conference held at his own counsel's request. While we concede that the testimony of Brenda Kirby damaged the defendant's case, after reviewing the record, we do not find any indication the conference in any way involved the testimony of Ms. Kirby. The conference was requested while the court was releasing the prior witness and before the State called Ms. Kirby to the stand. We do not find that "the subject matter of the conference implicates the defendant's confrontation rights[] or is of the nature that the defendant's presence would have a reasonably substantial relation to the defendant's opportunity to defend." *State v. Lee*, 335 N.C. at 264, 439 S.E.2d at 557.

The other conferences cited by the defendant were clearly held for administrative purposes and there has been no showing that the defendant's presence was necessary. We find no error in the trial court's conduct of these conferences.

[6] The defendant next contends the trial court failed to completely instruct the jury at each recess concerning the jurors' duties and responsibilities. The defendant cites twenty-eight separate instances in which the court failed to fully and adequately instruct the jury

according to the requirements of N.C.G.S. § 15A-1236. N.C.G.S. § 15A-1236 provides in pertinent part:

> (a) The judge at appropriate times must admonish the jurors that it is their duty:
>
>> (1) Not to talk among themselves about the case except in the jury room after their deliberations have begun;
>>
>> (2) Not to talk to anyone else, or to allow anyone else to talk with them or in their presence about the case and that they must report to the judge immediately the attempt of anyone to communicate with them about the case;
>>
>> (3) Not to form an opinion about the guilt or innocence of the defendant, or express any opinion about the case until they begin their deliberations;
>>
>> (4) To avoid reading, watching, or listening to accounts of the trial; and
>>
>> (5) Not to talk during the trial to parties, witnesses, or counsel.
>
> The judge may also admonish them with respect to other matters which he considers appropriate.

N.C.G.S. § 15A-1236(a) (1988). The defendant acknowledges that in both *State v. Harris*, 315 N.C. 556, 340 S.E.2d 383 (1986), and *State v. Richardson*, 308 N.C. 470, 302 S.E.2d 799 (1983), this Court held that a trial court is not required to give repeatedly a full, formal rendition of the mandates found in N.C.G.S. § 15A-1236(a). However, the defendant contends the present case is distinguishable from both *Harris* and *Richardson*. In *Harris*, the issue revolved around the jury's exposure to a media report and the court's failure to adequately instruct on N.C.G.S. § 15A-1236(a)(4). *Richardson*, the defendant contends, addressed the question of whether, in the context of the entire record, the admonitions given the jury were adequate. The defendant contends the instructions cited in this case were not adequate and failed the *Richardson* test.

We find the instant case to be on "all fours" with *Richardson*. At the first recess during jury selection, the judge instructed prospective jurors:

STATE v. LARRIMORE

[340 N.C. 119 (1995)]

Ladies and Gentlemen, take about a ten-minute break. Please, obviously, don't discuss the matter among yourselves. Don't discuss it with anybody else. Be careful about your . . . . Be careful about your conduct. Don't have any association with anybody involved in the case. And—and keep an open mind.

This instruction specifically addresses each of the requisite elements with the exception of the media element. However, the overall context of the situation makes this oversight *de minimis* at best. At the conclusion of the first day of jury selection and prior to sending those jurors already selected home for the week, the court gave the following instruction:

Now, please—please remember my instructions to you. And it's—it's certainly very important that you remember them and that you follow them, because you now know you're going to be on this jury.

So please do not read anything about—in the newspaper about the matter. Now you know why you're here, what we're trying, so you can be careful to avoid any information about it. Don't go to any alleged crime scene, and don't let anybody talk to you about the case. And keep an open mind obviously, and don't discuss it with anybody else.

The judge continued at length regarding interaction with family and friends, what could and could not be said, reporting attempted contact to the sheriff, and in general, the requisite conduct of jurors. While not precisely following the language of the statute, we find this instruction to contain all of the elements found in the statute and to be sufficiently clear as to fulfill the intent of the statute.

After the full jury panel was seated and prior to the beginning of the trial, the trial court presented formal pretrial instructions to the full jury. The defendant does not assign error to this instruction, nor should he, as the trial court addressed to the jury a complete jury instruction, saying:

Now, let me also remind you too, as I told you yesterday, it's very important that matters that are resolved in this Courtroom be resolved based upon what's heard in this Courtroom. You are not to obtain any information from any outside source. You are not to read anything in the newspaper, watch anything on television or listen to anything on the radio about the case. You are not to go to any alleged crime scene. You are not to read any law. You

are not to talk to anybody about the case. You are not to talk among yourselves about the case. You are obviously required to keep an open mind, as any Judge must, throughout the course of all the proceedings and don't make up your mind about the matter until you retire with your fellow jurors to deliberate and then having heard all the evidence as presented and the law and your responsibility as a juror as defined by the law, then and only then should you arrive at any decision in any manner that you hear this week.

You need to be extremely careful about your conduct, again I say, don't be—don't have any contact with anybody involved in the law suit, the witnesses, the lawyers, anyone who may testify or purport to have any knowledge about the matter or be associated with anybody who has some association with the parties in the law suit.

I think as we—as we—a juror yesterday, one juror sorta [sic] approached the District Attorney as if to say hello or something like that and the District Attorney kinda [sic] said I can't talk to you and I indicated likewise that he should not be talking to the D.A. You may see some people around here that you would walk up and speak to on any occasion. The Deputies, the District Attorney, the Attorneys for the Defendant, and normally it—in fact, it would be kinda [sic] unnatural for you not to say hello and just chat about what's going on in your life or the public life, but please remember as a juror, you can't take sides or have any association with either side so for the purposes of this proceeding this week, please do not have any contact or even any kind of casual conversations with the lawyers involved in the case. It's very important that you remain separate and apart from them and that they remain separate and apart from you throughout the course of all proceedings that you participate in this week.

As I said, due to the nature of the case that is going to be called for trial, it is possible that there may be some media coverage at some point during the proceeding. I don't know whether they will or not, but it is possible that there might be. There has been some in the past. Please, therefore, be careful that you don't read anything in the newspaper, watch anything on T.V. or listen to anything on the radio about it. If it's on like I said, just cut it off until that particular report is over and then you can turn it back on. If it's in the newspaper just—just pass over it, don't read it.

STATE v. LARRIMORE

[340 N.C. 119 (1995)]

You might want to have a member of your family kinda [sic] examine the newspaper to make sure its—that you're not exposed to it or clip it out and set it aside. If you want to read it later, after the case is over with, you certainly can. But, please don't be exposed to any information at all about the case. Again, I say "don't," please don't read anything about it or listen to anything about it in any of the media reports during the course of the week.

From that instruction to the end of the trial, the court consistently gave an abbreviated instruction which reminded the jurors to "keep an open mind" and not to discuss the case with anyone or let anyone discuss it with them. We hold here, as we did in *Richardson*,

that these instructions, when examined in the context in which they were given—that is, instructions made repeatedly not to discuss the case or form an opinion about it which were delivered to a group of adult men and women—were perfectly adequate. We are confident that the members of the jury who sat on defendant's case were well aware of their statutory duties as jurors.

*State v. Richardson*, 308 N.C. at 485, 302 S.E.2d at 808. This assignment of error is without merit.

[7] The defendant next asserts that the trial court erred in permitting the State to introduce a photograph of the deceased. Of three photographs of the victim introduced by the State at trial, the defendant objected only to the introduction of State's Exhibit #2. The defendant asserts the photograph was cumulative, excessive, inflammatory, and introduced solely to arouse the passions of the jury. *See State v. Hennis*, 323 N.C. 279, 372 S.E.2d 523 (1988). The photograph in question depicted the decedent's torso and head. State's Exhibit #1 depicted the position of the decedent as he was found. State's Exhibit #3 showed the decedent's back and, specifically, an exit wound in his back. The defendant asserts that State's Exhibit #1 adequately depicted the condition of the victim and that the closer view found in State's Exhibit #2 was excessively bloody and added no new information for the jury.

The defendant relies upon *State v. Hennis*, 323 N.C. 279, 372 S.E.2d 523, and N.C.G.S. § 8C-1, Rule 403, in arguing that the photograph in question was unfairly prejudicial and that this prejudice substantially outweighed any probative value. Recently, we stated:

We have held in numerous cases that photographs may be introduced as evidence "even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitive use is not aimed solely at arousing the passions of the jury." *See State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988).

*State v. Moseley*, 336 N.C. 710, 722, 445 S.E.2d 906, 913 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 802 (1995). We do not believe that three photographs are excessive and do not find that the single photograph the defendant excepts to was cumulative. The photograph served to illustrate the coroner's testimony regarding what he saw upon arriving at the crime scene. Specifically, the photograph illustrated the visible wounds on the decedent's body. The trial court did not err in admitting State's Exhibit #2.

[8] The defendant next assigns as error the trial court's decision to admit into evidence a photograph of a pistol purported to be identical to the pistol Ray McMillian used in committing the murder. The defendant asserts that the photograph constitutes irrelevant evidence used by the prosecution to enhance the credibility of the witness' testimony. After the State laid the proper foundation, the trial court admitted the photograph with a limiting instruction to the jury that the photograph was to be considered for illustrative purposes only. Ray McMillian testified utilizing the picture to describe the weapon he received from the defendant at the time Ray McMillian agreed to commit the murder.

"It is well established that 'in a criminal case every circumstance calculated to throw any light on the supposed crime is admissible and permissible.'" *State v. Hunt*, 297 N.C. 258, 261, 254 S.E.2d 591, 594 (1979) (*quoting State v. Arnold*, 284 N.C. 41, 47, 199 S.E.2d 423, 427 (1973) (citations omitted)). In the instant case, Ray McMillian testified that he stripped the pistol of all removable parts and disposed of those parts in various locations. He led investigators to the frame of the pistol, which was subsequently introduced into evidence as State's Exhibit #9. "It is a familiar psychological fact that seeing a thing is more convincing than hearing it talked about." 2 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 248 (4th ed. 1993). The unique shape of certain, unrecovered parts of the weapon made the jury's understanding of the weapon important to the State's case. The testimony of Ray McMillian affirming that the weapon depicted in the photograph was similar to the one he

received from the defendant was sufficient for introducing the photograph into evidence for illustrative purposes. This assignment of error is overruled.

[9] The defendant next contends that the trial court erred in excluding evidence showing that the decedent's estranged wife had a motive to kill her husband. The defendant's theory of the case throughout was that Hilda Edwards arranged for the murder of her husband. In support of this theory, the defendant's brother, Marvin Larrimore, testified during a *voir dire* hearing that Mrs. Edwards had come to his home on several occasions. On one of those occasions in January 1991, the decedent appeared outside of Larrimore's trailer. Larrimore called the police, who informed Larrimore that the only way they could remove Edwards was if Larrimore swore out a warrant, which he did. Larrimore testified that later he discovered that the tires on Mrs. Edwards' car had been slashed. He said:

> I did not see who cut the tires but he [the deceased] was outside the house and Mark Sellers, sitting right here in the Courtroom, was with him. I did not see him cut the tires, or who cut the tires, but somebody cut four tires off of Hilda Edwards' car.

After hearing Larrimore's testimony, the trial court ruled that this testimony and accompanying hearsay testimony arising out of the encounter were inadmissible.

The law is well established that in order to be both relevant and admissible, evidence tending to show the guilt of one other than the defendant must point directly to the guilt of a specific person or persons. *State v. Jones*, 337 N.C. 198, 211, 446 S.E.2d 32, 40 (1994). The test set out in *State v. McNeill*, 326 N.C. 712, 392 S.E.2d 78 (1990), provides that

> where the evidence is proffered to show that someone other than the defendant committed the crime charged, admission of the evidence must do more than create mere conjecture of another's guilt in order to be relevant. Such evidence must (1) point directly to the guilt of some specific person, and (2) be inconsistent with the defendant's guilt.

*Id.* at 721, 392 S.E.2d at 83; *see State v. Brewer*, 325 N.C. 550, 386 S.E.2d 569 (1989), *cert. denied*, 495 U.S. 951, 109 L. Ed. 2d 541 (1990).

In the instant case, the evidence offered by the defendant pointed solely to motive. Even viewed in the light most favorable to the

defendant, the evidence did no more than arouse suspicion that the decedent's estranged wife possessed a motive for the murder. There was no evidence linking Hilda Edwards to Ray McMillian, linking Hilda Edwards to a weapon, or in any other fashion linking Hilda Edwards to the crime. Further, the evidence was not inconsistent with the defendant's guilt. The State in the case *sub judice* produced substantial direct and circumstantial evidence linking the defendant to the crime. We find no violation of the defendant's due process rights nor of any other constitutionally guaranteed rights. As we noted in *Brewer*, the defendant was able to present relevant evidence in support of his theory through the testimony of other witnesses. The trial court properly excluded the evidence at issue here. We find no error.

**[10]** The defendant's next contention centers upon the reading into evidence of the testimony of Lori Hayes from the transcript of the earlier trial. This evidence was introduced by the State during the rebuttal phase of the State's case. The defendant contends his confrontation rights were violated by the State's action in not recalling an available witness.

During the presentation of the defendant's evidence, Lori Hayes was called and testified she saw Babe Godwin and Joseph Paul Davis at Hilda Edwards' trailer one week prior to the murder. Further, she testified that on the day of the murder, she saw Godwin and an unidentified black male enter Mrs. Edwards' trailer and remain there for some three and one-half hours. The defendant sought to utilize this testimony to bolster his theory of Mrs. Edwards' involvement in the plot to kill the victim. During cross-examination, the State sought to impeach Ms. Hayes by use of her testimony during the earlier trial in this matter. Finally, during the State's presentation of rebuttal evidence, the State was permitted over the defendant's general objection to introduce Ms. Hayes' earlier testimony.

In *State v. Whitley*, 311 N.C. 656, 319 S.E.2d 584 (1984), we faced this same question. "Under certain circumstances a witness may be impeached by proof of prior conduct or statements which are inconsistent with the witness's testimony. Inconsistent prior statements are admissible for the purpose of shedding light on a witness's credibility." *Id.* at 663, 319 S.E.2d at 589 (citing 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 46 (1982)). "When the witness's prior statement relates to material facts in the witness's testimony, extrinsic evidence may be used to prove the prior inconsistent statement

without calling the inconsistencies to the attention of the witness." *Id.*; *see State v. Green*, 296 N.C. 183, 250 S.E.2d 197 (1978).

The argument hinges on a determination of the materiality of the testimony involved. "Material facts involve those matters which are pertinent and material to the pending inquiry." *State v. Whitley*, 311 N.C. at 663, 319 S.E.2d at 589. The instant case is analogous to both *Whitley* and *Green*, inasmuch as the witness' testimony was crucial to the defendant's theory of the case. As the State argues, there can be little question that the evidence involved was material when the evidence formed the very foundation of the defense. The defendant knew of the existence of this statement and of the discrepancies between the witness' prior testimony and that given at this trial. The defendant's confrontation rights were not violated and the trial court did not err in admitting the reading into evidence of Lori Hayes' prior inconsistent testimony.

[11]    The defendant next assigns error to testimony elicited from Sterling Cartrette, a detective with the Columbus County Sheriff's Office. Ray McMillian testified that he had driven a truck, which the defendant had borrowed from Charlie McPherson, to the home of Mr. Edwards the night McMillian killed Edwards. McMillian testified further that he drove the truck to another location and parked it. Ray McMillian then testified that when he returned the next day to retrieve the truck, he had to break a window because he had locked the keys in the truck.

The defendant testified that Ray McMillian had not driven the truck and that a window of the truck had not been broken. Charlie McPherson testified in substantial corroboration of the defendant. Detective Cartrette testified on rebuttal for the State that on a Monday he went to see Mr. McPherson about the truck and Mr. McPherson told him the defendant had borrowed it the previous Thursday. Detective Cartrette testified that he returned to Mr. McPherson's home the next day and the truck was not there. When Detective Cartrette asked McPherson about the truck, Mr. McPherson replied that when he called the defendant to ask the defendant to return the truck, the defendant advised him that the window had been broken out and the truck was in the shop being repaired.

The defendant contends this testimony by Detective Cartrette that Mr. McPherson told Detective Cartrette that the defendant had told him that the window in the truck had been broken was double hearsay introduced to prove that Ray McMillian was driving the truck

**STATE v. LARRIMORE**

[340 N.C. 119 (1995)]

on the night of the murder. The defendant says that this testimony was not subject to any exception to the hearsay rule and that it was reversible error not to exclude it.

The testimony elicited from Detective Cartrette as to what Mr. McPherson told him was admissible as a prior inconsistent statement to impeach Mr. McPherson, who had testified that a window in the truck had not been broken. *State v. McKeithan*, 293 N.C. 722, 239 S.E.2d 254 (1977). The testimony as to what the defendant said in regard to the truck was admissible as an exception to the hearsay rule as an admission of a party. N.C.G.S. § 8C-1, Rule 801(d) (1992). The fact that this hearsay statement by the defendant was contained within a hearsay statement by Mr. McPherson does not affect its admissibility because both statements were admissible. *State v. Connley*, 295 N.C. 327, 345, 245 S.E.2d 663, 674 (1978), *judgment vacated*, 441 U.S. 929, 60 L. Ed. 2d 657, *on remand*, 297 N.C. 584, 256 S.E.2d 234, *cert. denied*, 444 U.S. 954, 62 L. Ed. 2d 327 (1979).

This assignment of error is overruled.

The defendant next assigns as error the trial court's decision to proceed with the cross-examination of Ray McMillian while the defendant was not present. The transcript of the trial indicates that a short recess was taken during a *voir dire* hearing involving Ray McMillian's testimony. At the conclusion of this recess, the following exchange occurred:

COURT: All right. We're back in session. The jury is absent.

Mr. Sauls, Mr. Pope, have you conferred with Mr. McMillian?

MR. SAULS: Yes, sir, we have.

MR. GORE: Your Honor, the Defendant's not here yet.

COURT: Okay. Let me say this to the camera man. You need to turn your camera off now, please. Thank you. There are some matters that—in which under our rules cannot be videotaped. One of them you probably will remember involves testimony of victims or sex acts with—with regard to children or things of that nature. That's what we're going to inquire into right now, and so I do not want that on tape. Thank you.

At this point, the defendant's counsel proceeded with his cross-examination of McMillian. The transcript contains no further mention

of the defendant as being present until the resumption of court the following morning.

Subsequent to the filing of the defendant's brief in this appeal, the State filed a motion to amend the record on appeal. Accompanying that motion is a stipulation signed by both the defendant's trial counsel and the assistant district attorney in which they attest to the defendant's presence during the challenged portion of the trial. After reviewing this motion and the defendant's motion in opposition, we hereby grant the State's motion to amend. Having done so, no factual issue remains to be resolved. This assignment of error is overruled.

[12] The defendant's next contention centers upon the testimony of Jeanette McMillian, the wife of Ray McMillian. The defendant sought to question Mrs. McMillian about the State's removing her child from her custody. The goal of the defendant's line of questioning was to elicit testimony in which Mrs. McMillian indicated that she chose to stand by her husband even though to do so meant to lose custody of her child. During a *voir dire* hearing, the questions were asked and answered as the defendant anticipated. The questions asked were:

Q. You even stood by him when the Department of Social Services took your child away, didn't you?

. . . .

Q. The Department of Social—the—the fact that the Department of Social Services took your child away had nothing to do with you, did it, Mrs. McMillian?

. . . .

Q. It had to do with Ray, didn't it?

The trial court ruled that only the first of these three questions could be asked. The defendant contends this decision "clearly deprived Defendant Larrimore of a <u>meaningful</u> right to confront and discredit Mrs. McMillian." The defendant asserts the testimony would have been "immensely important impeachment" evidence. For these reasons, the defendant contends the trial court erred in not permitting the full line of questions to be presented and answered before the jury.

The State asserts that the following statement by the defendant's attorney constituted waiver of the defendant's right to assign error to this decision by the trial court:

My learned chief counsel says stick with your first ruling, Judge, so we'll do that. The ruling that allows the first, doesn't allow the last two. We withdraw our request to make the last—next to the last question.

Earlier in the discussion, the defendant's counsel acknowledged the probable inadmissibility of the third question when he stated:

So, arguably, I mean, I—I would argue that they're all admissible but the last question is the least admissible of the ones I've argued.

Rule 10(b)(1) of the N. C. Rules of Appellate Procedure states that:

In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.

Where, as here, a defendant withdraws challenged questions, we do not find that the court's ruling on those questions has been preserved for review. The defendant abandoned his position at trial and cannot now resume the battle in this forum.

[13] The defendant next assigns as error the trial court's decision permitting the State to cross-examine the defendant regarding the contents of his "Affidavit of Indigency" filed in conjunction with his motion that counsel be appointed for this trial. The trial court conducted a *voir dire* hearing on the matter and concluded:

I'll allow a limited inquiry. I'll allow Mr. Kelly to ask him whether or not he signed an Affidavit on—under oath, on whatever date that was, that his—that the total value of his assets was Three Thousand, nine hundred Dollars, or whatever it says, and whether or not that statement was true.

I will not allow you to go vehicle by vehicle, piece of property by piece of property. That's all I will do, now.

. . . .

. . . Just ask him—I'll allow you ask him whether or not he made a false statement to the Court.

The Jury has heard right much about this man's property. The [jurors] in their own mind right now should be able to evaluate, based upon the testimony thus far, whether or not his total assets do not exceed Thirty-nine hundred Dollars. So, that's my ruling.

The defendant excepted to this ruling.

The defendant contends this ruling was error for three reasons. First, the evidence the prosecution sought to elicit had no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). Second, the evidence was a blatant attempt by the prosecution to mislead the jury into an inference that the defendant was guilty of misdeeds without any proper basis for that inference. Finally, the defendant contends the trial court made no effort to perform a Rule 403 balancing test to ascertain the prejudicial impact of this evidence.

North Carolina Rules of Evidence, Rule 611 states that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence." N.C.G.S. § 8C-1, Rule 611 (1992). We addressed this rule in *State v. Coffey*, 326 N.C. 268, 389 S.E.2d 48 (1990), noting that "although cross-examination is a matter of right, the scope of cross-examination is subject to appropriate control in the sound discretion of the court." *Id.* at 290, 389 S.E.2d at 61; *see State v. Hosey*, 318 N.C. 330, 348 S.E.2d 805 (1986). The trial court in this case conducted a *voir dire* hearing, evaluated the evidence, limited the scope of the line of questioning, and then exercised its discretion in admitting a limited portion of the evidence.

With regard to the admissibility of the evidence permitted as the result of the trial court's ruling, Rule 608(b) provides in pertinent part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning his character for truthfulness or untruthfulness . . . .

N.C.G.S. § 8C-1, Rule 608(b) (1992). In *State v. Syriani*, 333 N.C. 350, 428 S.E.2d 118, *cert. denied,* —— U.S. ——, 126 L. Ed. 2d 341 (1993), *reh'g denied,* —— U.S. ——, 126 L. Ed. 2d 707 (1994), we concluded

that the "types of conduct falling into this category include . . . 'making false statements on affidavits.' " *Id.* at 382, 428 S.E.2d at 135 (quoting *State v. Morgan*, 315 N.C. 626, 635, 340 S.E.2d 84, 90 (1986) (citation omitted)). We hold that the limited nature of the questions permitted by the trial court fall within the parameters of Rule 608(b).

The defendant's final question regarding the balancing test found in Rule 403 is without merit. The trial court obviously weighed the risk of prejudice against the information already known to the jury and concluded that the probative value of the limited questions outweighed the risk of prejudice to the defendant. We find no error.

[14] The defendant next asserts that the trial court erred in permitting the State's rebuttal witness, Brenda Kirby, to testify on redirect that she had been threatened by her boyfriend, Daniel Hill, should she testify in this trial. Daniel Hill was a former employee of the defendant. Brenda Kirby testified that she specifically remembered Hill being home on the day of the murder. She indicated that Hill never went to work for the defendant that day. On cross-examination, her testimony changed radically and she again reversed course on redirect. After the change during redirect, the following exchange occurred:

Q. Did he [Hill] threaten you in any way today?

A. Not really, no. He was just telling me—told me something. No, not really.

Q. Did he say he was going to kick your butt for testifying—

After defense counsel's objections were overruled by the court, Ms. Kirby answered, "[y]eah, he was just playing, I reckon. I don't know. That's all. He was just talking to me." On recross, Ms. Kirby denied that Hill threatened her. Finally, on further redirect, Ms. Hill acknowledged that Hill had assaulted her "about two or three times" and maybe more.

The defendant argues that this testimony could be construed by the jury as an attempt by the defendant to intimidate a witness. The authority cited in support of his argument rests on cases in which the defendant directly threatened a witness. These cases concluded that evidence of such threats may be construed as an awareness of guilt on the part of the defendant. *State v. Hicks*, 333 N.C. 467, 428 S.E.2d 167 (1993); *State v. Minton*, 234 N.C. 716, 68 S.E.2d 844 (1952).

We have addressed attempts by third parties to intimidate witnesses in previous cases. In *Minton,* the parents of the defendant attempted to bribe a witness. We held:

> The [trial] court rightly ruled that the witness' explanation was competent for the consideration of the jury on the question of her veracity. After the opposing party has sought to impeach a witness by showing that he made statements out of court inconsistent with or contradictory of his testimony at the trial, the witness thus assailed is entitled to support his credibility by explaining the circumstances under which the statements were made and his reasons for making them. This is true even though evidence otherwise inadmissible is thereby introduced. In applying this rule, courts have held that it may be shown that the witness had been advised or bribed or intimidated by third persons to make the inconsistent or contradictory statements.

*State v. Minton,* 234 N.C. at 724-25, 68 S.E.2d at 850 (citations omitted). We find this to be the situation in the instant case. The witness presented an extremely flexible story that changed with each phase of the examination. Once the witness' credibility was placed at issue, the State properly sought to provide an explanation for the changes. The defendant has not shown that he was prejudiced. We find no error.

[15] In conjunction with the prior assignment of error, the defendant separately assigns as error the trial court's decision permitting Ms. Kirby to testify that Hill assaulted her on several occasions in the past. The defendant notes correctly that we have held

> that the prosecutor's cross-examination of defendant in this case concerning an alleged specific instance of misconduct, i.e., two assaults by pointing a gun at two people during the same incident, was improper under Rule 608(b) because extrinsic instances of assaultive behavior, standing alone, are not in any way probative of the witness' character for truthfulness or untruthfulness.

*State v. Morgan,* 315 N.C. 626, 635, 340 S.E.2d 84, 90. The instant case is clearly distinguishable. In the instant case, the prior conduct in question was not that of the witness, but instead impacted on the witness. Where, as here, the witness has been the subject of past acts of violence and thereby has reason to fear another individual, those past acts are relevant to the issue of the witness' character for truthfulness or untruthfulness. Further, we agree with the State that the defendant

opened the door for this line of questioning by eliciting answers from the witness indicating a close and loving relationship between Kirby and Hill. The trial court did not err in permitting limited evidence concerning past assaults by Daniel Hill upon the witness, Brenda Kirby.

**[16]** The defendant's next assignment of error involves the instruction given before the reading into evidence of the prior testimony of two elderly defense witnesses. Mr. and Mrs. Roy Squires testified on the defendant's behalf at the first trial in this matter. Due to their advanced age, the parties agreed by stipulation that the couple's testimony from the first trial would be read to the jury in its entirety. Prior to the admission of the testimony, the trial court instructed the jury:

> COURT: Ladies and Gentlemen, the next two witnesses will testify now by virtue of their previous transcribed testimony. Mr. and Mrs. Roy Squires are both elderly and they both have some health problems. They previously testified in an earlier stage of this proceeding, which occurred in Columbus County, in late July or early August of this year. Their testimony was taken down by the Court Reporter, just like everybody else's has been this week, and it has been typed up and so rather than have them come back and testify in your presence, the parties have agreed that you will be permitted to simply hear their previous testimony, given under oath, in Court, in this matter. *You'll treat this testimony as any other witness that you hear. You will treat this testimony no differently than any other witness that's been sworn and testified in person here in this Courtroom.*

(Emphasis added.) The defendant did not object to this language at trial. This assignment of error is therefore subject to the plain error standard of review.

The defendant contends that the vice in this instruction is that there was accomplice testimony and testimony by interested witnesses whose testimony the court instructed the jury to scrutinize. The defendant argues that by telling the jury to treat the testimony of Mr. and Mrs. Squires as they treated the testimony of other witnesses, the jurors were instructed to scrutinize this testimony.

We believe the jurors would have no difficulty understanding from the court's instruction that they were to treat the Squireses' testimony as they would the testimony of ordinary witnesses, with

scrutiny reserved for those witnesses about whom the court instructed.

The State asserts and we agree that the instruction benefitted the defendant. In the absence of Mr. and Mrs. Squires, the jury would have a tendency to give less weight to this testimony and the instruction served to inform the jury before it heard the testimony that this testimony was equally as important as any other evidence the jury heard. We find no error in the instruction given by the trial court.

[17] The defendant next assigns as error a comment made by the trial court in the presence of the jury. In reaction to a delay caused by the temporary absence of a defense witness, the following colloquy occurred:

MR. GORE: Where is he?

MR. GHISALBERTI: He's outside, going to the bathroom.

COURT: The witnesses that you know you are going to call, would you just tell them to come on in and have a seat in the Courtroom so we don't have to go looking for them.

MR. GHISALBERTI: Your Honor, to the best of my knowledge, he's got a bladder problem.

COURT: Okay. Well, it seems like everybody's got a—have to stop and wait for them.

Mr. Lee [Defense Counsel]: So do I, Judge.

The defendant contends the comment by Mr. Lee was intended to soften the impact of the trial court's comments. The defendant did not object to the comments at trial.

The defendant contends the comments constituted a violation of N.C.G.S. § 15A-1222 inasmuch as the comments were an improper expression of judicial opinion. According to the defendant, the trial court's statement "made it clear to the jury that he favored the State's witnesses over defense witnesses in this case."

We have long held that:

It is fundamental to our system of justice that each and every person charged with a crime be afforded the opportunity to be tried "before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm." *State v. Carter*, 233 N.C. 581, 583, 65 S.E.2d 9, 10 (1951). As the standard-bearer of impartiality the

trial judge must not express any opinion as to the weight to be given to or credibility of any competent evidence presented before the jury. *E.g.*, N.C. Gen. Stat. § 15A-1222 (1978); *State v. Brady*, 299 N.C. 547, 264 S.E.2d 66 (1980); *State v. Guffey*, 39 N.C. App. 359, 250 S.E.2d 96 (1979).

*State v. Harris*, 308 N.C. 159, 167, 301 S.E.2d 91, 97 (1983). In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized. *State v. Blackstock*, 314 N.C. 232, 333 S.E.2d 245 (1985); *State v. Allen*, 283 N.C. 354, 196 S.E.2d 256 (1973); *State v. Holden*, 280 N.C. 426, 185 S.E.2d 889 (1972). "[U]nless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless." *State v. Perry*, 231 N.C. 467, 471, 57 S.E.2d 774, 777 (1950).

In the instant case, the comments of the trial judge were less than exemplary, though it should be noted that the judge edited his own comments. Much as in *State v. Agnew*, 294 N.C. 382, 241 S.E.2d 684, *cert. denied*, 439 U.S. 830, 58 L. Ed. 2d 124 (1978), the statements in this instance reflected "efforts on the part of the trial judge to maintain progress and proper decorum in what was evidently a prolonged and tedious trial." *Id.* at 395, 241 S.E.2d at 692. The defendant has failed to show prejudice as a result of these comments. Furthermore, the trial court instructed the jury during the final jury charge, that:

> The law, as indeed it should, requires the presiding judge to be entirely impartial. And therefore, you are not to draw any inference from any ruling that I have made, or any inflection in my voice or expression on my face, or any question that I may have asked a witness, or anything else that I have said or done during the course of this trial, that I have an opinion or have intimated an opinion as to whether any part of the evidence should or should not be believed, as to whether any fact has or has not been proven, or as to what your findings ought to be. Again I say, it is your exclusive province to find the true facts of this case and to render a verdict reflecting the truth as you find it. It's my job to preside over this case, to make sure that both sides get a fair trial, and explain the law to you and submit the case to you.

After examining the transcript and considering the totality of the circumstances surrounding the court's comments, we do not find that the comments rise to the level of error, and certainly, the comments do not constitute plain error.

**[18]** In his next contention, the defendant assigns as error the trial court's denial of his motions to dismiss the conspiracy charge due to insufficient evidence. The defendant moved for dismissal at the close of the State's evidence, at the close of all evidence and after the verdict was announced, but before the entry of judgment.

It is well-settled law in this state that:

> In determining whether the evidence is sufficient to go to the jury, the trial court is to ascertain whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense. If so, the evidence is sufficient, as a matter of law, to go to the jury. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The trial court is to determine whether the evidence allows a "reasonable inference" to be drawn as to the defendant's guilt.

*State v. Woods*, 307 N.C. 213, 217, 297 S.E.2d 574, 577 (1982) (citations omitted). The essential elements of the charge of conspiracy to commit murder are: (1) an agreement between two or more people; (2) to do an unlawful act, specifically, to murder another. *Id.* at 219, 297 S.E.2d at 578.

The defendant in the instant case contends that there was no evidence before the court that the defendant and McMillian ever had a "meeting of the minds." *State v. Christopher*, 307 N.C. 645, 300 S.E.2d 381 (1983); *State v. Gallimore*, 272 N.C. 528, 158 S.E.2d 505 (1968). A "conspiracy may be shown by circumstantial evidence." *State v. Gary*, 78 N.C. App. 29, 35, 337 S.E.2d 70, 74 (1985), *disc. rev. denied*, 316 N.C. 197, 341 S.E.2d 586 (1986). "Ordinarily the existence of a conspiracy is a jury question." *Id.* The testimony of Ray McMillian indicated that the defendant proposed the conspiracy, and by his actions, McMillian agreed to the proposed course of action. There was ample direct and circumstantial evidence provided through the testimony of Ray McMillian, through the corroborating testimony of others, and through the physical evidence presented at trial from which the jury could have concluded that there was a "meeting of the minds" between McMillian and the defendant as to the murder of Cecil Edwards.

**[19]** The defendant also contends that under Wharton's Rule, he cannot be found guilty of conspiracy to commit murder. Wharton's Rule is a rule of construction used to determine whether a legislative body intended to allow the prosecution of a person for conspiracy to commit a crime as well as the prosecution for commission of the crime. If the crime charged requires more than one person to commit it and the immediate consequences of the crime rest on the parties who commit it, rather than on society at large, Wharton's Rule has been used by some jurisdictions. Adultery, incest, bigamy and dueling are crimes which might implicate the rule. *Iannelli v. United States*, 420 U.S. 770, 43 L. Ed. 2d 616 (1975). We have not applied the rule in North Carolina. *State v. Branch*, 288 N.C. 514, 220 S.E.2d 495 (1975), *cert. denied*, 433 U.S. 907, 53 L. Ed. 2d 1091 (1977), *overruled on other grounds by State v. Adcock*, 310 N.C. 1, 310 S.E.2d 587 (1984).

If Wharton's Rule were a part of the law of this state, it would have no application in this case. Murder, the crime for which the defendant was tried, does not require more than one person to commit it, and the immediate consequences of the crime do not fall only on the persons who commit it.

This assignment of error is overruled.

**[20]** The defendant next assigns error to the denial of his motion to dismiss the charge of first-degree murder. The defendant was tried as an accessory before the fact after the principal had pled guilty to second-degree murder. He contends he could not be tried for any greater offense than the offense to which the principal pled guilty, which was second-degree murder.

In *State v. Arnold*, 329 N.C. 128, 404 S.E.2d 822 (1991), we held it was reversible error to submit second-degree murder to the jury in the case of an accessory before the fact to murder. We held that only first-degree murder should have been submitted. *Arnold* holds that an accessory before the fact may be tried for first-degree murder although the principal has pled guilty to second-degree murder.

This assignment of error is overruled.

**[21]** The defendant next assigns error to the court's failure to submit second-degree murder as a possible verdict. The State's evidence tended to establish each and every element of first-degree murder, including premeditation and deliberation. The defendant denied any involvement in the crime and denied knowing McMillian. If the jury believed the State's evidence, it had to find the defendant guilty of

first-degree murder. If it believed the defendant's evidence, it would have had to find him not guilty. It thus would have been error to have submitted second-degree murder. *State v. Conner*, 335 N.C. 618, 440 S.E.2d 826 (1994); *State v. Strickland*, 307 N.C. 274, 298 S.E.2d 645 (1983), *modified on other grounds by State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986) (adopting Mitchell, J., concurrence as correct rule).

The defendant contends that there was evidence that he consumed alcoholic beverages during the time before the killing, which would support a finding that he could not have premeditated or deliberated about the killing. The evidence of this consumption of alcoholic beverages did not rise to such a level that the jury could find from it that the defendant was incapable of premeditating or deliberating the murder. We shall discuss later in this opinion how evidence of the consumption of alcohol is treated.

This assigment of error is overruled.

[22] The defendant next raises as error ten categories of comments made by the prosecution during closing arguments. Recently, we held:

> Trial counsel are granted wide latitude in the scope of jury argument, and control of closing arguments is in the discretion of the trial court. *State v. Zuniga*, 320 N.C. 233, 253, 357 S.E.2d 898, 911, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987); *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986). Further, for an inappropriate prosecutorial comment to justify a new trial, it "must be sufficiently grave that it is prejudicial error." *State v. Britt*, 291 N.C. 528, 537, 231 S.E.2d 644, 651 (1977).

*State v. Soyars*, 332 N.C. 47, 60, 418 S.E.2d 480, 487-88 (1992). The defendant did not object to any of the challenged comments at trial. "In deciding whether the trial court improperly failed to intervene *ex mero motu* to correct an allegedly improper argument of counsel at final argument, our review is limited to discerning whether the statements were so grossly improper that the trial judge abused his discretion in failing to intervene." *State v. Holder*, 331 N.C. 462, 489, 418 S.E.2d 197, 212 (1992) (citing *State v. Hamlet*, 312 N.C. 162, 172, 321 S.E.2d 837, 844 (1984)).

The defendant first assigns as error the following arguments by the prosecutor:

> If I had started before lunch *I wouldn't have been able to see you because of the smoke, and the smog, and the dust, and the dirt,*

*cast up by the defense counsel. There would have been a cloud between me and you. I wouldn't have been able to see you. So we've had an hour and fifteen minutes for that cloud to dissipate itself and now I'm able to talk to you in an atmosphere free of those contaminates* [sic].

. . . .

Absent the key, the whole scenario constructed by defense counsel and constructed artfully, I must say, falls apart. The key had no significance. *It is a red herring that they want you to chase. They want you to not see the truth. That's what the fog, the smoke, the dirt, that's what that was all cast out for, to obscure the truth.*

. . . .

Ray McMillian in describing the vehicles that he saw, said there was a Ford, a white Ford truck up there. So, *all these little smoke screens they've been throwing up.* Listen to them. Look at them. That's not really a smoke screen to say that those two men saw a white truck and, therefore, Ray McMillian couldn't have had Charlie Mac's [sic] truck, because the Defendant himself testified that he had a truck just like Charlie except that he had a dump bed—Charlie's had a dump bed and his didn't.

. . . .

This thing about the key. You know, your job here is to find the truth. This is sorta [sic] like a forest, this courtroom. Forest. And somewhere in that forest is the truth and your job is to find that truth. *The defense wants you chasing rabbits, when you ought to be hunting bear. And the bear is the truth. But they want you chasing rabbits. And the key's a rabbit.*

But I suggest to you, even [if] Ray McMillian had the key, and even if he got it from Babe Godwin, and even if he got it—and even if Babe Godwin got it from Mrs. Edwards, which there is absolutely, positively, no evidence that that key exited [sic] or that he got one. But even if he did, that doesn't exclude—that doesn't exclude that man from being a part of Babe Godwin getting a key from her. That doesn't—that doesn't exclude that. *But I don't want you chasing that rabbit, because I can explain that rabbit away, but it's not worth chasing,* because there's no evidence of it. And what you have to decide has to be based on your

STATE v. LARRIMORE

[340 N.C. 119 (1995)]

reason and common sense. It cannot be based on some fanciful, manufactured, theory by the defense. It's got to be based on reason and common sense and there's nothing there.

(Emphasis added.) While the defendant limits his assignments of error to the portions highlighted above, we have long held that arguments are to be evaluated in context. *State v. Shank*, 327 N.C. 405, 394 S.E.2d 811 (1990); *State v. Langford*, 319 N.C. 340, 354 S.E.2d 523 (1987); *State v. Arnold*, 314 N.C. 301, 333 S.E.2d 34 (1985). Each of the references which the defendant assigns as error refers to the defendant's emphasis upon his contention that Ray McMillian entered the victim's house by use of a key allegedly provided by the victim's estranged wife. While rich in hyperbole, we find no error in these arguments of the prosecution and certainly no gross impropriety requiring the trial court to intervene *ex mero motu*.

[23] The defendant next contends the prosecutor's arguments seeking to invoke sympathy for the victim were grossly improper and included facts outside the record. The prosecutor argued:

Have you ever thought for a moment to yourself what it feels like when you—when Mr.—if you happened to be *this poor unfortunate individual who was talking on the phone and you come to a—an assassin at your door and you're shot full in the chest with a .45 caliber slug*, is it unusual for your body to be found ten feet away from the door that you were approaching. Is there anything unusual about that, seven feet, eight feet, whatever it was.

(Emphasis added.) The State argues and we agree that reading this passage in context indicates the intent of the prosecutor was to argue that the position of the body was explained by the circumstances in evidence and did not support the defense's theory of the case. We do not view this passage as improperly suggesting jurors place themselves in the position of the victim, nor does it seek to elicit sympathy for the victim. This argument is neither improper nor grossly improper.

[24] The defendant next asserts that the prosecutor attempted improperly to entice certain jurors into identifying with certain prosecution witnesses. The challenged argument reads:

Now, as to each one of these people, I argue to you that they were believable and should be, in spite of the fact that they had some interest in the outcome. In spite of the fact that he might

STATE v. LARRIMORE

[340 N.C. 119 (1995)]

have to be a law enforcement officer, or related to the Defendant. I've told you that you should observe and draw your own conclusions whether they were telling the truth or not.

*Now, let's talk about another class of witnesses altogether. Another class of witnesses altogether. People like you, sir. People like you, ma'am. People like you. People like you ma'am.* Just people in the community where this man lives. Just them and nobody else, with no axe to grind. To fill in the details, the defense calls it. Details. These details are killers. They're small but they're lethal.

. . . .

*Now, these later people that I've been talking to you about, as I pointed out to you earlier, they're people just like you.* They're just people doing their duty as they see it. They had no axe to grind against this man by saying what they said from this witness stand.

(Emphasis added.) Even though the prosecutor did single out certain jurors at times, he spoke to the jury collectively in making his point concerning the distinction between interested witnesses and noninterested witnesses who corroborated McMillian's account of events. *See State v. McNeil,* 324 N.C. 33, 51-52, 375 S.E.2d 909, 920 (1989), *sentence vacated on other grounds,* 494 U.S. 1050, 108 L. Ed. 2d 756, *on remand,* 327 N.C. 388, 395 S.E.2d 106 (1990), *cert. denied,* 499 U.S. 942, 113 L. Ed. 2d 459 (1991). As we held in *McNeil,* this type of argument is not grossly improper.

**[25]** The defendant next contends the prosecutor improperly invoked sympathy for the victim's family by arguing:

Without this—this man, this behind the scenes manipulator, there would have been no murder of Cecil Edwards. There would have been none. And his grandchildren would be home playing with him now but for this man over here (indicating).

We have addressed similar arguments on numerous occasions. In *State v. Laws,* 325 N.C. 81, 381 S.E.2d 609 (1989), *sentence vacated on other grounds,* 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), *on remand,* 328 N.C. 550, 402 S.E.2d 573, *cert. denied,* 502 U.S. 876, 116 L. Ed. 2d 174, *reh'g denied,* 502 U.S. 1001, 116 L. Ed. 2d 648 (1991), we faced an analogous situation and determined that "[t]he prosecutor's brief reference to the victims and their families did not entitle the defendant

to a new trial." *Id.* at 106, 381 S.E.2d at 623-24 (citing *State v. Brown,* 320 N.C. 179, 358 S.E.2d 1, *cert. denied,* 484 U.S. 970, 98 L. Ed. 2d 406 (1987)). We find the same to be true in the instant case.

**[26]**  The defendant next contends that the prosecution improperly argued that the jury served as the conscience of the community. The defendant cites the following argument:

> *Ladies, Gentlemen, when you hear of such acts, you say, gee, somebody ought to do something about that. I want you to look around. You're that somebody that everybody else talks about. . . .*

> . . . .

> So, folks, you might as well look around. There is no mythical somebody hiding in this Courtroom. You are the somebody. You, the buck, as bad as you hate it, stops right here with you twelve people.

> *Today you are the moral conscious* [sic] *of that community. It's up to you to see that justice is done.*

(Emphasis added.) We recently addressed this issue and held:

> In *Scott,* this Court held that arguments designed to convince the jury to convict a defendant due to public sentiment against crime were improper. [*State v. Scott,* 314 N.C. 309, 312, 333 S.E.2d 296, 298 (1985).] We have, however, held that a reminder to the jury that for purposes of the present trial, it acts as the voice and conscience of the community is not improper. In the case at hand, the prosecutor explained to the jurors that they were the voice and conscience of the community. In addition, the prosecutor told the jurors that it was their responsibility to make a decision by reminding the jurors: "It's your verdict. It's how you look at it." Thus, the State did not tell the jurors to decide defendant's punishment based on community sentiment, but rather told the jurors that they were to act as the voice of the community.

*State v. Robinson,* 336 N.C. 78, 128, 443 S.E.2d 306, 331 (1994) (citation omitted), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 650 (1995); *see State v. Soyars,* 332 N.C. 47, 418 S.E.2d 480. We hold that the argument in the instant case is analogous to the argument cited in *Robinson.* We find no reason to overrule that decision and, therefore, find no error.

**[27]** The defendant next assigns as error arguments by the prosecutor describing the defendant in derogatory terms. These passages included the following:

> I'll admit that Ray McMillian was an evil man, Members of the Jury, but there are degrees of evil. There are degrees of it. What I'm talking to you today, and whom I'm pointing out over here (indicating), he's not. George Larrimore is not garden variety, every day type of evil. That's what—that's what Ray McMillian is. *This man is the ultimate. He is the quintessential evil* without which, without which, people like Danny Ray McMillian can [sic] function. Without the string pulled. With the puppet master over here (indicating). The manipulator. Without people like him you and I would not have to worry about the Danny Ray McMillian's [sic] of this world. It's the smart one's [sic] like George Larrimore who stay in the background and who pull the strings, and who operate in that sneaky fashion. They're the people that you have to—they're the people that you have to worry about.
>
> . . . .
>
> So, there he sits waiting for your judgment. There Mr. Larrimore sits. He is *one of the most dangerous men in this State,* I submit to you.

(Emphasis added.) We do not find that the argument reaches the level of gross impropriety requiring the trial court to intervene *ex mero motu. See State v. Pinch,* 306 N.C. 1, 18, 292 S.E.2d 203, 218, *cert. denied,* 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *reh'g denied,* 459 U.S. 1189, 74 L. Ed. 2d 1031 (1983), *overruled on other grounds by State v. Benson,* 323 N.C. 318, 372 S.E.2d 517 (1988), *and by State v. Robinson,* 336 N.C. 78, 443 S.E.2d 306 (1994); *State v. Johnson,* 298 N.C. 355, 368-69, 259 S.E.2d 752, 761 (1979).

**[28]** The defendant next contends that the prosecutor improperly argued facts not in evidence in arguing

> [t]hat the murder weapon, that which can only be classed as the murder weapon, was seen by him [Bobby Carl Hinson], in possession of the Defendant, hours before Mr. Cecil Edwards was killed.

The State notes that Hinson testified at trial that he saw the defendant in possession of and handling a pistol matching the description of the murder weapon early on the day of the murder. Other witnesses

corroborated this account during the rebuttal phase of the State's case. We agree with the State's position that the description provided by Hinson and others was sufficient to support the reasonable inference that the weapon seen in the defendant's possession was the same weapon that the defendant later provided Ray McMillian for the purpose of committing the murder. As we have held numerous times, counsel "may argue the law and the facts in evidence and all reasonable inferences drawn from them." *State v. Kirkley*, 308 N.C. 196, 212, 302 S.E.2d 144, 153 (1983), *overruled on other grounds by State v. Shank*, 322 N.C. 243, 367 S.E.2d 639 (1988); see *State v. Holder*, 331 N.C. 462, 418 S.E.2d 197. We find no error in the prosecutor's argument regarding Mr. Hinson's testimony and the murder weapon.

**[29]** The defendant next assigns as error the following portion of the prosecutor's closing argument:

> Sterling Cartrette, a sworn law enforcement officer, is a witness to whom you should have given the greatest attention, and who has the greatest degree of believability.

The defendant contends that as a rebuttal witness, Detective Cartrette testified in a manner inconsistent with his testimony at the earlier trial and recanted some earlier observations. The defendant contends the argument by the prosecutor invaded the province of the jury regarding assessing the credibility of witnesses.

The State argues that the portion of the argument cited by the defendant is taken out of context and contends we should also consider the preceding paragraph, in which the prosecutor argued:

> Do you really believe that Sterling Cartrette made up—this sworn law enforcement officer, made up what he told you? Do you believe that? That he saw this particular truck which he recognized as belonging to Mr. McPherson at the intersection of 1004 and 410 on the night of the murder. That he saw that truck. That he knows that truck. And that it was Mr. McPherson's truck that he saw with his wife when he was off duty. Do you think that that man made that up? Sterling Cartrette. Do you think he fabricated the fact that he saw the same truck a few days later and observed shards of glass inside that truck on the floor board and in the seat area? Do you think he fabricated all of that for your benefit? Sterling Cartrette, a sworn officer of the law. But defense counsel says, since he is a sworn law enforcement officer that he's biased. He's biased. You shouldn't believe him. He picks out this man over

here to pick on, George Larrimore. He wants to construct the scenario around George Larrimore with all the fifty thousand people in Columbus County to nail with this.

After reviewing the defendant's closing arguments, we conclude that the prosecutor in this instance was responding to assertions made by the defendant. The defendant's counsel clearly questioned the credibility of Detective Cartrette. Numerous times in the past, we have held that "counsel is allowed to respond to arguments made by defense counsel and restore the credibility of a witness who has been attacked in defendant's closing argument." *State v. Perdue*, 320 N.C. 51, 62, 357 S.E.2d 345, 352 (1987) (citing *State v. McCall*, 289 N.C. 512, 223 S.E.2d 303, *sentence vacated in part on other grounds*, 429 U.S. 912, 50 L. Ed. 2d 278 (1976)); *see State v. Gladden*, 315 N.C. 398, 340 S.E.2d 673, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986). We find no error in this argument by the prosecutor.

[30] The defendant contends the trial court also erred in permitting the prosecutor to argue that:

There is not a shred of evidence, even if you assume that what Mr. Butler says is so, what kind of key this was. House key? Car key? Safe deposit box key? What kind of a key?

Secondly, this man, Mr. Gerald Butler, is a convicted forger. Now, a convicted female abuser and assaulter is one thing. A convicted forger is quite another. A convicted forger is a type of thief, but he's not a type of theft [sic] that comes straight up to you face to face and takes what you got. He's the type of person that takes your money by stealth, by the faking of paper, checks, and things of that nature, in order to misrepresent himself and get money from you that way. That is plain garden variety theft, but it is a particular kind of theft. It is secret and sneaky.

*The testimony of such a person as Gerald Butler, a convicted forger, is not worthy of your consideration let alone belief.*

(Emphasis added.) The defendant assigns as error the italicized portion of this argument. As we note throughout this discussion, the defendant did not object to this argument at trial, so the assignment of error is subject to the gross impropriety standard. After a thorough review of the argument and the record, we do not find this argument to be grossly improper.

[31] The defendant lastly assigns error to the portion of the prosecutor's argument dealing with the testimony of Jeanette McMillian. The prosecutor argued:

> Jeanette McMillian[] falls into the same category. She's the wife of this man and you got to be the judge of her creditability [sic], because you heard her testify. You heard her testify. You got to determine. You got to determine whether or not—what you heard had the ring of truth to it or whether it didn't. It is not an argument simply because she's the man's wife, or was the man's wife at that time, if she is therefore lying. That is not so. That does not make her an unreliable witness. You have a right to judge her creditability [sic] by what you saw, and what you heard, and whether you believe that, or whether you don't. And if you do believe her, in spite of the fact that she was his wife at the time, then she's entitled to the same weight to be given any disinterested witness.

The language utilized by the prosecutor here echoes the instruction on interested witnesses. The prosecutor repeatedly encourages the jury to weigh the witness' credibility based upon the jurors' observations. Only if the jury determines this witness was credible does the prosecutor contend that the weight of that testimony should be the same as other credible evidence. We find this to be a correct statement of the law.

Examining the totality of the arguments to which the defendant assigns error, we find that the trial court did not abuse its discretion in handling these arguments. The arguments do not rise to the level of gross impropriety individually or collectively. This assignment of error is overruled.

[32] The defendant next assigns error to the sustaining of an objection to part of the defendant's closing argument. During the defendant's closing argument, the following events occurred:

> [MR. GHISALBERTI:] Ms. Teresa Edwards, and I don't have any reason not to believe her. I do. And again, our hearts go out to her for the horror she had to endure. She said that twice on a Friday, before the killing, she saw Babe and Ray McMillian—
>
> MR. GORE: Objection.
>
> MR. GHISALBERTI:—riding around with a big gun.
>
> COURT: Sustained. Sustained. Only argue facts in evidence.

Mr. Ghisalberti: Teresa Edwards—Teresa Sellers, I'm sorry.

Court: Sustained. Only argue facts in evidence.

The defendant asserts his argument was a reasonable inference based on Ms. Sellers' testimony on cross-examination that she had seen Babe Godwin and a black male riding around in Godwin's truck and carrying a gun. As the State correctly notes, Ms. Sellers was unable to identify the black male she saw with Godwin. The defendant's attorney should not have referred to the black male as Ray McMillian.

The defendant also challenges the trial court's ruling on the grounds that the phrasing of the court's admonition constituted an impermissible expression of judicial opinion. We do not agree. The court merely asserted a correct statement of the evidence.

The defendant's last contention under this assignment of error is that he was denied effective assistance of counsel. The defendant cites no authority and makes no argument for this contention and we deem the issue abandoned.

This assignment of error is overruled.

[33] The defendant next assigns error to a portion of the charge in which the jurors were told that if they found one or more witnesses were interested in the outcome, they could take this interest into account, and if after doing this they believed such testimony in whole or in part, they would treat such testimony the same as any other believable evidence. We have approved similar instructions in *State v. Martin*, 294 N.C. 253, 240 S.E.2d 415, and *State v. Griffin*, 280 N.C. 142, 185 S.E.2d 149 (1971). By the same token, it was not error to instruct the jurors that there was evidence that Ray McMillian was an accomplice and would be considered an interested witness whose testimony they would consider with the greatest care and caution, but if after doing so they believed his testimony in whole or in part, they would treat what they believe as any other believable testimony in the case. *State v. Irwin*, 304 N.C. 93, 282 S.E.2d 439 (1981).

[34] The defendant argues next under this assignment of error that the court charged the jury in such a way that it weakened the testimony of two of his principal witnesses. Mr. and Mrs. Roy Squires testified at the first trial to matters that gave the defendant an alibi. They were in poor health and it would have been difficult for them to have attended the second trial. It was agreed that their testimony at the first trial could be read into evidence at the second trial. When the

transcript of the prior testimony was read to the jurors, the court instructed them that they would consider this testimony as if they were hearing it from Mr. and Mrs. Squires in the courtroom.

In the charge to the jury, the court instructed that the evidence showed that numerous witnesses had made statements in prior proceedings in this case or had made statements to other persons. The court told the jury not to consider such statements as evidence of the truth of what was said, but whether it corroborated or impeached other witnesses.

The defendant says that by telling the jury not to consider such statements to prove the truth of what was said, the court instructed the jury not to consider the testimony of Mr. and Mrs. Squires. We believe the jury had no trouble discerning that this part of the charge did not apply to Mr. and Mrs. Squires' testimony. Mr. and Mrs. Squires were not mentioned in this part of the charge. The court instructed the jury as to how it was to consider the testimony of Mr. and Mrs. Squires when it was introduced. We can assume the jury followed this instruction. The instruction applied only to prior testimony which supported or contradicted evidence at trial. This instruction could not apply to Mr. and Mrs. Squires' testimony.

This assignment of error is overruled.

[35]  The defendant next assigns as error the trial court's failure to give an instruction on voluntary intoxication for either the defendant or Ray McMillian. The defendant contends that evidence indicated that both men had been drinking heavily for a prolonged period preceding the agreement and that McMillian continued drinking excessively up to the time of the murder. Based on this evidence, neither man was capable of forming the specific intent necessary as an element of first-degree murder. The defendant acknowledges that his trial counsel did not seek this instruction, but contends the trial court should have given the instruction based on the evidence before the court and committed plain error by not doing so.

We recently addressed this issue in *State v. Skipper*, 337 N.C. 1, 446 S.E.2d 252 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 895 (1995), where we held:

It is "well established that an instruction on voluntary intoxication is not required in every case in which a defendant claims that he killed a person after consuming intoxicating beverages or controlled substances." *State v. Baldwin*, 330 N.C. 446, 462, 412

S.E.2d 31, 41 (1992). This Court has repeatedly held that in order to be entitled to an instruction on voluntary intoxication, the defendant must produce evidence that would support a conclusion by a judge that defendant was so intoxicated that he could not form a deliberated and premeditated intent to kill. *State v. Mash*, 323 N.C. 339, 346, 372 S.E.2d 532, 536 (1988); *see also State v. Shoemaker*, 334 N.C. 252, 272, 432 S.E.2d 314, 324 (1993); *State v. Vaughn*, 324 N.C. 301, 308, 377 S.E.2d 738, 741 (1989). "The evidence must show that at the time of the killing the defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose to kill." *State v. Medley*, 295 N.C. 75, 79, 243 S.E.2d 374, 377 (1978) (citations omitted); *see also State v. McQueen*, 324 N.C. 118, 141, 377 S.E.2d 38, 51 (1989); *State v. Strickland*, 321 N.C. 31, 41, 361 S.E.2d 882, 888 (1987). Evidence of mere intoxication is not enough to justify the instruction. *State v. Mash*, 323 N.C. at 346, 372 S.E.2d at 536.

*State v. Skipper*, 337 N.C. at 36-37, 446 S.E.2d at 271.

We do not find that the defendant has made the requisite showing that either man was "utterly incapable of forming" the requisite intent. *Id.* at 36, 446 S.E.2d at 271. The trial court did not err in not giving an instruction on voluntary intoxication.

In the same argument, the defendant also contends the trial court committed constitutional error in its instruction on guilt under the theory of accessory before the fact. The defendant contends the instruction violated his due process rights. The defendant cites no authority in support of this contention. We addressed this issue in *Skipper* and held against the defendant's position. *Id.* at 37, 446 S.E.2d at 271-72. We are not persuaded to alter that stance.

This assignment of error is overruled.

[36] The defendant next contends that the trial court erred in failing to charge the jury in its mandate that either the defendant or Ray McMillian must possess a specific intent to kill in order for the jury to convict the defendant of first-degree murder under the theory of accessory before the fact.

Reviewing the complete instructions given by the trial court, we note that the court correctly charged the jury regarding the elements of first-degree murder as they applied to Ray McMillian, specifically including the requirement that there be proof beyond a reasonable

doubt that he possessed the specific intent to kill Cecil Edwards. The court also correctly set out the necessary elements for conviction based upon the theory of being an accessory before the fact to first-degree murder. *See State v. Woods*, 307 N.C. 213, 218, 297 S.E.2d 574, 577.

The defendant challenges the mandate of the court in which the trial court stated:

> So I instruct you that if you find from the evidence beyond a reasonable doubt that on or about the 17th day of August 1991, Daniel Ray McMillian unlawfully killed Cecil Edwards with a firearm, and that he acted with malice, with *premeditation and with deliberation*, and that George Larrimore knowingly counseled, aided, and encouraged Daniel Ray McMillian to commit first-degree murder of Cecil Edwards, by providing a handgun and ammunition to Mr. McMillian to be used to kill Cecil Edwards; and by providing information to Mr. McMillian about the location of the residence of Cecil Edwards; and by providing a vehicle to Mr. McMillian to be driven by McMillian to carry out the first-degree murder of Cecil Edwards; and by paying Mr. McMillian approximately nine hundred dollars to commit a first-degree murder of Cecil Edwards.

This Court has held that "[a] specific intent to kill is a necessary constituent of the elements of premeditation and deliberation, and therefore, proof of premeditation and deliberation is also proof of intent to kill." *State v. Thomas*, 332 N.C. 544, 560, 423 S.E.2d 75, 84 (1992) (citing *State v. Lowery*, 309 N.C. 763, 768, 309 S.E.2d 232, 237 (1983)). When the court charged, in its final mandate, that the jury had to be satisfied beyond a reasonable doubt that the killing was with premeditation and deliberation, it charged that the killing had to be intentional.

This assignment of error is overruled.

[37] The defendant contends the trial court committed plain error in submitting both first-degree murder and conspiracy to commit murder to the jury. The defendant refers this Court back to his earlier arguments on merger and cites no additional authority in support of this assignment of error. This assignment of error is overruled.

[38] The defendant next assigns as error the trial court's denial of a requested nonstatutory mitigating factor. The defendant asked the court to take into consideration the plea agreement and sentencing of

Ray McMillian in determining the appropriate sentence for the defendant with respect to the conspiracy conviction. The trial court denied the request by stating, "[t]he court does not find that to be a mitigating factor." The defendant contends this decision violated the principles of *Eddings v. Oklahoma*, 455 U.S. 104, 110, 71 L. Ed. 2d 1, 8 (1982), in which the United States Supreme Court held that in capital sentencing hearings, a jury must consider all mitigating circumstances. The defendant asserts that ruling applies, by analogy, to all criminal sentencers. He cites no authority for this position. The mitigating factor which the defendant wanted is a nonstatutory mitigating factor. We have held that finding such a factor is within the discretion of the sentencing judge. *State v. Spears*, 314 N.C. 319, 333 S.E.2d 242 (1985). The State makes the point that "<u>McMillian's</u> <u>sentence</u> was not a factor in mitigation of punishment for <u>defendant's</u> conspiracy <u>conviction</u>." We find no abuse of discretion.

This assignment of error is overruled.

**[39]** The defendant next argues that the trial court erred in finding two aggravating factors in this case. The two factors found were: (1) the defendant induced others to participate in the commission of the offense, and (2) the defendant occupied a position of leadership or dominance of other participants in the commission of the offense. The defendant relies upon the holding in *State v. SanMiguel*, 74 N.C. App. 276, 328 S.E.2d 326 (1985), in reasserting his argument that there was no evidence of a meeting of the minds between the defendant and McMillian and then carrying this argument to the conclusion that the trial court therefore impermissibly based the aggravating factors on conjecture.

We found sufficient evidence to support the conspiracy charge as well as the accessory charge earlier in this opinion and need not restate our conclusions in full at this point. There was ample evidence upon which the trial court could base its finding of these two factors.

The defendant continues his argument by contending that the trial court improperly relied upon the same evidence to support both aggravating factors. *See* N.C.G.S. § 15A-1340.4 (1988). The defendant contends the trial court's reliance upon evidence necessary to prove essential elements of the crimes in deciding on aggravating factors placed him "twice in jeopardy for the same offense by being subjected to multiple punishments for the same offense."

The State contends, and we agree, that there was ample independent evidence to support each of the factors. The evidence at trial indicated that McMillian did not know Cecil Edwards and had no inclination to kill anyone prior to the defendant's offer of payment for the crime. The defendant had the means and the motive to commit the murder and induced McMillian into carrying out the act. Likewise, there was ample evidence indicating that the defendant made the plan, provided the weapon and the transportation, trained McMillian in the use of the weapon, and finally, provided the money after the task was complete. Each of these events serves as evidence of a leadership role in the conspiracy.

The defendant cites the passage from *SanMiguel* in which the Court of Appeals held that "inducement to enter an agreement necessarily precedes the agreement itself." 74 N.C. App. at 281, 328 S.E.2d at 330. As the State notes in its brief, the inducement and leadership are wholly discrete events from the actual agreement constituting the conspiracy. *State v. Wilson*, 338 N.C. 244, 449 S.E.2d 391 (1994). The inducement preceded the agreement, while the leadership followed the agreement. We determined earlier in this opinion that there was sufficient evidence of agreement to justify submission of the conspiracy charge to the jury. While some evidence supporting each of the factors and the elements of the crime may overlap, discrete evidence exists to support each factor. *State v. Gay*, 334 N.C. 467, 495, 434 S.E.2d 840, 856 (1993). We find no error in the trial court's determination regarding factors in aggravation of the conspiracy conviction and no merit in the defendant's double jeopardy claim.

[40] In his final assignment of error, the defendant contends the trial court erred in imposing a Class A life sentence rather than the appropriate Class B life sentence. The controlling statute, N.C.G.S. § 14-5.2, provides:

All distinctions between accessories before the fact and principals to the commission of a felony are abolished. Every person who heretofore would have been guilty as an accessory before the fact to any felony shall be guilty and punishable as a principal to that felony. However, if a person who heretofore would have been guilty and punishable as an accessory before the fact is convicted of a capital felony, *and the jury finds* that his conviction was based solely on the uncorroborated testimony of one or more principals, coconspirators, or accessories to the crime, he shall be guilty of a *Class B felony*.

**STATE v. LARRIMORE**

[340 N.C. 119 (1995)]

N.C.G.S. § 14-5.2 (1993) (emphasis added). In the instant case, the trial court failed to submit the special question to the jury regarding the basis of its verdict. Therefore, there is no record as to whether the jury based its decision "solely on the uncorroborated testimony" of McMillian or considered the corroborating evidence presented at trial as well. This constitutes error on the part of the trial court.

The defendant cites *State v. Tucker*, 331 N.C. 12, 414 S.E.2d 548 (1992), as authority in support of a new trial. We do not agree. While the defendant in *Tucker* was awarded a new trial, on other grounds, this Court correctly noted that whether the defendant "is tried . . . for a Class A or a Class B felony, the maximum punishment he can receive is life imprisonment." *Id.* at 30, 414 S.E.2d at 558. N.C.G.S. § 14-1.1, the sentencing statute in effect at the time of the trial of this matter, indicates that both a Class A felony and a Class B felony require mandatory life sentences, the single distinction between the two being that a Class A felony is subject to capital punishment. In the instant case, as in *Tucker*, were we to send this matter back to the trial court for resentencing as a Class B felony, the outcome in terms of sentence would be no different. N.C.G.S. § 15A-1371(a1) provides that "[a] prisoner serving a term of life imprisonment with no minimum term is eligible for parole after serving 20 years." N.C.G.S. § 15A-1371(a1) (1988) (repealed 26 March 1994, effective for cases tried on or after 1 October 1994). No distinction is made between a Class A life sentence and a Class B life sentence either in sentencing or in the manner in which the Department of Correction handles an individual. Throughout the General Statutes regarding parole and other sentence reducing considerations, Class A and Class B are consistently grouped together, as opposed to Class C and lower felonies. *See also* Stevens H. Clarke, *Law of Sentencing, Probation, and Parole in North Carolina* 41-43 (1991).

For the aforementioned reasons, we do not find that the defendant has been prejudiced by the trial court's error. We note, however, that this holding is limited to cases tried on or before 1 October 1994, as the new sentencing guidelines effective that date create marked distinctions between Class A and Class B felonies.

NO ERROR.

Justices LAKE and ORR did not participate in the consideration or decision of this case.