*521 Affirmed by published opinion. Judge Shedd wrote the opinion, in which Judge King joined. Judge Thacker wrote a dissenting opinion.
SHEDD, Circuit Judge:
Maurice Hope appeals the denial of his habeas corpus petition. For the following reasons, we affirm.
I.
On January 1, 2008, between 6 a.m. and 7 a.m., a Bi-Lo grocery store located in Rock Hill, South Carolina, was robbed. Hope was arrested for this crime along with two co-conspirators, brothers Corey Spruell[1] and Jarrod Heath. Spruell and Heath pled guilty to charges related to the robbery, and Hope proceeded to trial on charges of kidnapping, armed robbery, conspiracy to commit armed robbery, and possession of a firearm during the commission of a violent crime.
At trial, the State presented the testimony of three Bi-Lo employees who were present at the time of the robbery. The employees testified that two men entered the store wearing ski masks and carrying handguns. One of the men held the employees at gunpoint while the other took the money from the bookkeeper’s station. Because the robbers wore ski masks, the employees could not specifically identify them. However, they described the robber who held them at gunpoint as a black male of medium or stocky build, similar to Hope’s physical characteristics.
Pursuant to plea deals, Spruell and Heath testified on behalf of the State. Spruell testified that he and Hope, with the help of Heath, robbed the Bi-Lo store. According to Spruell, he entered the store with Hope while Heath remained in the car as the getaway driver, and he took the money from the bookkeeper’s station while Hope held the employees at gunpoint. Heath then testified that he had overheard Spruell and Hope planning the robbery and agreed to drive them. Heath confirmed that Spruell and Hope entered the Bi-Lo with handguns and robbed the store while wearing ski masks. The State also presented evidence showing that Hope’s wallet was found in the trunk of Heath’s car when police searched it.[2]
A videotape of the robbery confirmed this general description of the events. Additionally, the State.called a disinterested third party witness who testified that she saw a suspicious car containing a minimum of three individuals enter the Bi-Lo parking lot shortly before the robbery. The witness testified that she thought the ear was a dark colored Dodge Stratus or Intrepid. The trial testimony indicates that these vehicles look very similar to the dark green Chrysler 300 driven by Heath. Thus, the videotape corroborates the testimony of what occurred inside the Bi-Lo, and the disinterested third party substantiates Spruell and Heath’s testimony that three men participated in the robbery.
The defense called six witnesses, including Hope. One witness was Hope’s girlfriend, and now wife, Christian, three witnesses were Hope’s roommates, and one witness was a roommate’s friend. According to the defense witnesses, Hope arrived at his house between 12 a.m. and 1 a.m. on January 1, 2008, for a party. Hope and the other witnesses testified that they stayed up talking until the sun came up, and during that time Hope never left the *522 house. After the sun rose, at around 7 a.m., Hope and his girlfriend went to their bedroom. At about this time, Hope and his girlfriend accidentally broke their bed, and it took somewhere between 30-60 minutes to fix the bed. Thus, according to Hope and his alibi witnesses, Hope could not have robbed the Bi-Lo between 6 a.m. and 7 a.m. on January 1, 2008, because he was at home when the robbery occurred.
Hope also testified that he left the jurisdiction after being informed that he was wanted for armed robbery. Hope went to Detroit, Michigan, for four months and lived with a cousin. Hope was on probation at the time, and his travel to Detroit was a violation of his probation. He returned to South Carolina for his son’s birthday, and the police found him hiding in a closet when they searched his house.
In the State’s reply, a detective testified that he went to Hope’s residence on January 11, 2008. He recalled that at least three of the alibi witnesses were present when he arrived, including Christian. Despite explaining that he was there to inquire about Hope’s involvement in the robbery, the individuals did not advise the detective that Hope was at home with them on the morning of the robbery. Christian also failed to mention that Hope was with her on the morning of the robbery during any of the four to six subsequent phone conversations the detective had with her.
Hope’s sole defense was the alibi testimony, and South Carolina law requires that an alibi charge be given under these circumstances. See State v. Robbins, 275 S.C. 373, 271 S.E.2d 319, 320 (1980); State v. Bealin, 201 S.C. 490, 23 S.E.2d 746, 756 (1943). Nevertheless, Hope’s trial counsel failed to request an alibi instruction, and the court did not sua sponte provide one. The jury found Hope guilty on all counts, and the court sentenced him to a 30-year imprisonment term.
Thereafter, the South Carolina Court of Appeals summarily dismissed Hope’s direct appeal. Hope then filed an application for post-conviction relief (“PCR”), asserting claims of ineffective assistance of counsel pursuant to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (requiring proof of deficient performance and resulting prejudice to succeed on an ineffective assistance claim). Among other allegations, Hope argued that his trial counsel was ineffective for failing to request an alibi charge. After conducting a hearing, the PCR court denied his application, and the South Carolina Supreme Court summarily denied his petition for writ of certiorari.
Pursuant to 28 U.S.C. § 2254, Hope then filed this federal habeas petition reiterating his claim that his trial counsel was ineffective because he did not request an alibi instruction. The State moved for summary judgment arguing that Hope did not suffer prejudice from trial counsel’s failure to request an alibi charge. The district court granted the motion and dismissed the habeas petition, finding no prejudice under Strickland. However, the district court granted a certificate of appealability on the question of whether Hope was prejudiced from the lack of an alibi instruction.
II.
We review the district court’s order denying habeas relief de novo. Tucker v. Ozmint, 350 F.3d 433, 438 (4th Cir. 2003) (citations omitted). Under the Anti-terrorism and Effective Death Penalty Act of 1996, federal courts may not grant habe-as relief in a § 2254 action unless the underlying state adjudication:
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Feder *523 al law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding.
28 U.S.C. § 2254(d). This “is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.” Cullen v. Pinholster, 563 U.S. 170, 181, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011) (internal quotation marks and citations omitted).
For purposes of this appeal, the “pivotal question is whether the state court’s application of the Strickland standard was unreasonable.” Harrington v. Richter, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). “Under § 2254(d), an unreasonable application of federal law differs from an incorrect application of federal law, and a state court ‘must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.’ ” Jones v. Clarke, 783 F.3d 987, 991 (4th Cir.), cert. denied, — U.S.-, 136 S.Ct. 186, 193 L.Ed.2d 148 (2015) (quoting Harrington, 562 U.S. at 101, 131 S.Ct. 770). Because the South Carolina Supreme Court summarily denied Hope’s petition for review, we directly review the PCR court’s reasoning. Brumfield v. Cain, — U.S. -, 135 S.Ct. 2269, 2276, 192 L.Ed.2d 356 (2015).
III.
“The essence of an ineffective-assistance claim is that counsel’s unprofessional errors so upset the adversarial balance between defense' and prosecution that the trial was rendered unfair and the verdict rendered suspect.” Kimmelman v. Morrison, 477 U.S. 365, 374, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). To prevail on an ineffective assistance claim, a defendant must establish two elements: “First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.” Strickland, 466 U.S. at 687,104 S.Ct. 2052.
The PCR court determined that Hope’s trial counsel’s performance was deficient because he failed to request an alibi charge. However, the PCR court further concluded that Hope did not prove that he suffered prejudice from the lack of an alibi charge. Regarding • the lack of prejudice, the PCR court explained that alibi testimony was presented to the jury, both attorneys discussed the alibi testimony in their closing arguments, the trial court repeatedly charged the jury that the State had the burden to prove each element of the charged crimes beyond a reasonable doubt and that Hope is presumed innocent, and the crucial issue was credibility because the jury could have believed either the State’s witnesses or Hope’s witnesses, but not both.
The parties accept for purposes of appeal that trial counsel’s performance was deficient. Thus, we focus our inquiry on the prejudice prong of Strickland. When reviewing trial counsel’s failure to request a jury instruction, “[o]ur inquiry regarding the prejudice prong is twofold: (1) whether the instruction, if requested, should have been given; and (2) if the instruction had been given, was there a reasonable probability that the outcome of the proceedings would have been differ *524 ent.” United States v. Luck, 611 F.3d 188, 189 (4th Cir. 2010).
The first element is not in dispute. If requested, South Carolina law requires an alibi instruction to be given when the defendant claims that he was in another place at the time of the criminal act. See Robbins, 271 S.E.2d at 320.[3] Accordingly, the dispositive issue is whether there is a reasonable probability that the outcome of the proceedings would have been different had the alibi instruction been given to the jury. “A reasonable probability is probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. “Strickland asks whether it is ‘reasonably likely’ the result would have been different,” and the “likelihood of a different result must be substantial, not just conceivable.” Harrington, 562 U.S. at 111-12, 131 S.Ct. 770 (citations omitted). In jurisdictions such as South Carolina, where a jury must return a unanimous verdict to convict, the prejudice prong of Strickland is met where “there is a reasonable probability that at least one juror would have struck a different balance.” Wiggins v. Smith, 539 U.S. 510, 537, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).
Stated generally, Hope argues that he was prejudiced because the jury likely misunderstood the burden of proof surrounding an alibi defense. According to the PCR court, the sample South Carolina alibi instruction reads:
The defendant in this case has raised a defense of alibi. That means the defendant was not at the scene of the crime at the time it was committed, but was elsewhere and had nothing to do with it. The word “alibi” means “elsewhere.”
There is no burden upon the defendant to prove that he was not at the scené of the crime. There is no burden upon the defendant to prove his alibi. The defendant need not prove he was somewhere else.
The burden is on the State to prove beyond a reasonable doubt that the defendant was present at the scene of the crime, actually participated in the crime, and was not somewhere else. Thus, the State has the burden of proving beyond a reasonable doubt that the defendant was present and committed the crime. The State has the burden of disproving the defendant’s alibi defense.
A521 n.6 (quoting Anderson, S.C. Requests to Charge—Criminal § 6-19 (2012)). Hope contends that this instruction was necessary for the jury to understand that it was the State’s burden to disprove the alibi defense, not his burden to prove it. According to Hope, had the jury correctly understood this, there is a reasonable probability that the jury would have returned a different verdict. We disagree.
First, the trial court repeatedly instructed the jury, at least 15 times, that the State must prove Hope guilty beyond a reasonable doubt. Plainly, the jury could not have found Hope guilty of any offense if any juror did not believe beyond a reasonable doubt that he was present during the robbery. The trial court also clearly defined reasonable doubt and repeatedly stated that Hope was to be presumed innocent. Because the jury was fully aware the State bore the burden of proof on each element of each offense, it is inconceivable that the jury was misled on which party bore the burden of proof. See Foster v. Ward, 182 F.3d 1177, 1187 (10th Cir. 1999) *525 (finding defendant suffered no prejudice under Strickland when the alibi instruction did not clearly allocate the burden of proof because “[t]he jury instructions ... quite obviously and appropriately placed the burden on the prosecution to prove [defendant’s] guilt beyond a reasonable doubt”); Duckett v. Godinez, 67 F.3d 734, 745-46 (9th Cir. 1995) (finding that the defendant was afforded a fair trial, even though his requested alibi instruction was not given, because the instructions as a whole clearly placed the burden of proof on the state).
Additionally, the crucial issue at trial was witness credibility, and the parties presented the jury with two different and irreconcilable factual scenarios. The State’s version directly placed Hope at the scene of the crime and implicated him .in the robbery. Hope’s version directly placed him at home and absolved him of any involvement in the robbery. The parties’ closing arguments discussed the witnesses’ credibility, and the trial court specifically instructed the jury that it must judge credibility. The guilty verdict necessarily establishes that the jury found the State’s witnesses to be credible and believed the State’s version of events. We do not believe that the inclusion of an alibi instruction would have changed the jury’s credibility determination or the ultimate verdict. See Henderson v. Kibbe, 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) (“An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.”).
Hope argues that the potential prejudicial impact of counsel’s failure is amplified here because the record weakly supports the jury verdict. Specifically, Hope claims that Spruell and Heath’s testimony, the only direct evidence of his involvement, is unreliable because they made conflicting statements to police, they testified pursuant to a plea bargain, and accomplice testimony is inherently suspect.[4] However, these arguments are without merit because these credibility issues were presented directly to the jury. During closing argument, Hope’s trial counsel specifically attacked the credibility of the State’s witnesses for these very reasons. Nevertheless, the jury found Hope guilty beyond a reasonable doubt. See United States v. Clark, 541 F.2d 1016, 1018 (4th Cir. 1976) (“Although the testimony of an accomplice should be examined with care, ... it is sufficient to sustain a conviction ... if it convinces a jury of the defendant’s guilt beyond a reasonable doubt.”); United States v. Hadaway, 681 F.2d 214, 218 (4th Cir. 1982) (“[W]hile a defendant is always at liberty to cast aspersions on the testimony of a plea bargainer as unfairly favoring the government to provide a quid pro quo for the bargain, there is the countervailing consideration that self-exposure to a perjury charge is unlikely. The plea bargainer’s position frequently makes him extremely reluctant to commit another crime or crimes and thus lay himself open to greater punishment.”).
Moreover, in describing the State’s case as “weak,” Hope claims that “[a]part from the brothers’ testimony, there is no meaningful evidence of [his] guilt.” Appellant’s Op. Br. 38. Contrary to *526 this assertion, there is other meaningful evidence that supports the guilty verdict. Specifically, Hope’s wallet was found in Heath’s vehicle, and Hope left the jurisdiction for four months upon learning that he was wanted for armed robbery. Flight from prosecution is evidence of guilt. State v. Pagan, 369 S.C. 201, 631 S.E.2d 262, 266 (2006); see also United States v. Obi 239 F.3d 662, 665 (4th Cir. 2001) (consciousness of guilt may be deduced from evidence of flight). In addition, the surveillance video and the testimony from the disinterested third party who saw a suspicious car containing three individuals corroborates Spruell and Heath’s testimony.
Finally and most importantly, Hope has failed to demonstrate that the PCR court unreasonably applied federal law as defined' by the Supreme Court.[5] At this stage in the proceedings, Hope must show “that the state court’s ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.” Harrington, 562 U.S. at 103, 131 S.Ct. 770. Simply put, the PCR court’s decision is a reasonable application of Strickland. The decision properly applies the Strickland framework and is supported by the record.[6]
IV.
Hope has failed to meet his high burden of establishing that the PCR court unreasonably applied the Strickland standard or unreasonably concluded that Hope failed to establish Strickland prejudice. We therefore affirm the decision of the district court dismissing Hope’s habeas petition.

AFFIRMED

. The record is inconsistent as to the spelling of Spruell's name. We use “Corey Spruell’' and not "Cory” or "Sprueill” because the parties did so in their briefs.

. The police searched Heath's car ten or eleven days after the robbery occurred.

. Although required under South Carolina law, the South Carolina Supreme Court has previously denied applications for post-conviction relief based on ineffective assistance because the failure to request the alibi charge was not prejudicial. See Ford v. State, 314 S.C. 245, 442 S.E.2d 604 (1994); Gibbs v. State, 403 S.C. 484, 744 S.E.2d 170 (2013).

. Notably, Hope’s alibi witnesses, who were his roommates, friends, and future wife, also have credibility issues. They failed to tell police about Hope’s alibi when questioned on January 11, 2008, and their testimony may be less credible based on their (Continued) relationships with Hope. See Coleman v. Lemke, 739 F.3d 342, 352 (7th Cir. 2014) (The alibi witness’ "relationship to [the defendant] suggests she had a motive to give evidence in [the defendant’s] favor.”); Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006) (noting the extent of the witness’s personal relationship with the defendant should be considered in evaluating the credibility of the witness).

. We also do not believe that the PCR court’s decision is based on an unreasonable determination of the facts, as factual determinations made by the state court are rebuttable only by clear and convincing evidence. 28 U.S.C. § 2254(e).

. To be clear, we are not saying that alibi instructions are insignificant, and we acknowledge that the South Carolina Supreme Court and the Fourth Circuit have recognized the importance of these instructions. See Roseboro v. State, 317 S.C. 292, 454 S.E.2d 312, 313-14 (1995); United States v. Hicks, 748 F.2d 854, 857-59 (4th Cir. 1984). We simply do not believe Hope has met his burden of showing he is entitled to habeas relief under the circumstances of this case for trial counsel’s failure to request an alibi charge.