IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 19-734

Filed: 19 May 2020

Onslow County, Nos. 16 CRS 54819-20, 55710; 18 CRS 2390

STATE OF NORTH CAROLINA

v.

JOSHUA GRAPPO, Defendant.

Appeal by Defendant from judgments entered 28 January 2019 by Judge Phyllis M. Gorham in Onslow County Superior Court. Heard in the Court of Appeals 15 April 2020.

*Attorney General Joshua H. Stein, by Senior Deputy Attorney General Amar Majmundar, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Emily Holmes Davis, for Defendant.*

INMAN, Judge.

"It is desirable in criminal maters to adhere to the established practice. Innovations usually result in prolonged litigation." *State v. Benton*, 226 N.C. 745, 747-48, 40 S.E.2d 617, 618 (1946) (citation omitted). The wisdom of our Supreme Court's words more than 70 years ago is manifest in this appeal, which stems from a trial court's decision to forego its statutory duty to charge the jury by instead having a courtroom clerk read aloud significant portions of the instructions to the jury. Although we agree with Defendant that the judge's act constituted error—one that

we emphasize should not be repeated by members of the trial bench in the future—we hold that Defendant has failed to demonstrate prejudice warranting a new trial.

Defendant also requests we remand this case for resentencing pursuant to a motion for appropriate relief ("MAR") filed with this Court. Because Defendant's MAR raises an evidentiary question and relies on matters not found in the settled record on appeal, we dismiss his MAR without prejudice to him re-filing one with the trial court.

## I. **FACTUAL AND PROCEDURAL HISTORY**

The evidence introduced at trial discloses the following:

On 23 June 2016, Joseph Allen purchased opioids from Defendant at Allen's home in Snead's Ferry. After Defendant left the premises, Allen took a dose and collapsed on the bathroom floor. Allen's girlfriend, Shannon Connor, found him unconscious in the bathroom and phoned Defendant for help; Defendant answered, told Connor to call 9-1-1, and returned to the house with two women a short time later. Defendant and one of the women attempted to resuscitate Allen but were unsuccessful. Defendant left the scene before paramedics arrived. Allen was taken to the hospital, and the next day providers pronounced him brain dead from prolonged cardiac arrest caused by a drug overdose.

A few weeks later, on 22 July 2016, police detained Defendant and his girlfriend during a routine traffic stop. During the stop, Defendant's girlfriend

informed police that she was hiding heroin inside her pants. A search of Defendant, his girlfriend, and the vehicle uncovered 106 individual bags of opioids. Defendant was arrested and indicted on charges arising from both the traffic stop and Allen's death, including, among others: (1) felony conspiracy to possess heroin; (2) maintaining a vehicle; (3) possession with intent to sell or deliver heroin; (4) possession with intent to sell or deliver fentanyl; (5) selling fentanyl; (6) delivering fentanyl; and (7) second-degree murder.

Defendant's charges were joined for trial beginning 14 January 2019. After all evidence had been presented, counsel had participated in a charge conference, and closing arguments were presented to the jury, the trial court called a five-minute recess. Following the recess, but before the jury returned to the courtroom, the trial judge engaged in the following discussion with counsel:

> **THE COURT:** I'm going to have the clerk to help me with the reading. Any objection from the [S]tate?
>
> **[THE STATE]:** Not from the [S]tate, Judge.
>
> **THE COURT:** Any objection?
>
> **[DEFENDANT'S COUNSEL]:** I'm sorry, Judge, I was talking.
>
> **THE COURT:** I'm going to have the clerk to help me with reading the instructions to the jury.
>
> **[DEFENDANT'S COUNSEL]:** No objection.

The trial court called the jury back into the courtroom and announced that, "I'm going to read you the instructions, and the clerk is going to help me to read some of these instructions. So listen to the instructions as she is reading them." The clerk then read a significant portion of the jury instructions, including instructions on: (1) the function of the jury; (2) the presumption of innocence; (3) the State's burden of proof and the definition of reasonable doubt; (4) the jury's duty in evaluating the credibility of witnesses; (5) the weight of the evidence; (6) the definitions of direct and circumstantial evidence; and (7) the effect of Defendant's decision not to testify. When the clerk misread some of these instructions, the judge interjected to offer corrections. The clerk concluded reading her portion of the instructions, after which the trial judge read the remainder of the instructions focusing on the specific charges and factual findings required by the jury to convict Defendant.[1]

The jury ultimately returned guilty verdicts on each charge with the exception of second-degree murder; the jury instead found Defendant guilty of involuntary manslaughter, a lesser-included offense. Defendant timely appealed.

## II. ANALYSIS

### A. *Preservation*

Defendant's single argument on appeal posits that the trial court violated its statutory duty to instruct the jury consistent with N.C. Gen. Stat. §§ 15A-1231 and -

---

[1] There is no indication in the record that the jury received written copies of the jury instructions.

1232. The State contends that Defendant's trial counsel did not preserve this issue and, because counsel affirmatively stated he had no objection, invited any alleged error. *See, e.g., State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001) ("[A] defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review." (citation omitted)).

We are not persuaded that Defendant's trial counsel invited error because it is not clear from the record that the judge put counsel on notice that she actually intended to relinquish to the clerk her duty to charge the jury. A practitioner could very easily interpret the judge's statement that she would "have the clerk to help *me with reading*" to mean that the judge would read the full instructions with some other form of assistance from the clerk. For example, one could easily take the statement to mean that the judge would read the instructions while the clerk handed printed copies up to the bench or, alternatively, followed along silently to catch any mistakes made by the judge in reading the instructions aloud. Defendant could reasonably presume that the trial court would still perform its necessary judicial functions in charging the jury and, given that the trial court's statement is subject to straightforward interpretations that do not involve an abdication of any necessary statutory duties, we decline to hold that Defendant's failure to object to the trial court's statement amounts to invited error.

We are not persuaded that Defendant was required to object *sua sponte* once the courtroom clerk spoke in place of the trial court during portions of the instructions because a trial court's violation of a statutory mandate is automatically preserved for appellate review. *See, e.g., State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985) ("[W]hen a trial court acts contrary to a statutory mandate and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding defendant's failure to object at trial.").

## B. Standard of Review

Defendant argues that the trial court violated the statutory mandates found in N.C. Gen. Stat. §§ 15A-1231 and -1232 by allowing the clerk to read some jury instructions and, in doing so, gave the jury the impression that those instructions were less important than those read aloud by the judge herself. Whether a trial court violated a statutory mandate is subject to *de novo* review. *State v. Lyons*, 250 N.C. App. 698, 705, 793 S.E.2d 755, 761 (2016) (citation omitted).

To obtain relief for this type of error, Defendant must show that he was prejudiced. "Whether the judge's comments, questions or actions constitute reversible error is a question to be considered in light of the factors and circumstances disclosed by the record, the burden of showing prejudice being upon the defendant." *State v. Blackstock*, 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985) (citations omitted). "[I]n a criminal case it is only when the jury may reasonably infer from the evidence

before it that the trial judge's action intimated an opinion as to a factual issue, the defendant's guilt, the weight of the evidence or a witness's credibility that prejudicial error results." *Id.* (citing *State v. Yellorday*, 297 N.C. 574, 256 S.E.2d 205 (1979)). The intimated opinion must " 'have had a prejudicial effect on the result of the trial' " to warrant reversal. *State v. Larrimore*, 340 N.C. 119, 155, 456 S.E.2d 789, 808 (1995) (quoting *State v. Perry*, 231 N.C. 467, 471, 57 S.E.2d 774, 777 (1950)). Otherwise, " 'the error will be considered harmless.' " *Id.*

We note that Defendant does not argue the error in this case amounts to structural error, which "is a rare form of constitutional error resulting from structural defects in the constitution of the trial mechanism which are so serious that a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *State v. Garcia*, 358 N.C. 382, 409, 597 S.E.2d 724, 744 (2004) (citations and quotation marks omitted). "Structural error, no less than other constitutional error, should be preserved at trial," *id.* at 410, 597 S.E.2d at 745 (citations omitted), and Defendant did not argue the existence of a structural constitutional error before the trial court.

*C. Error*

The trial court committed error in failing to instruct the jury consistent with our General Statutes. N.C. Gen. Stat. § 15A-1231(c) plainly states that "the *judge* must instruct the jury in accordance with G.S. 15A-1232[,]" (emphasis added), and

N.C. Gen. Stat. § 15A-1232 provides that "[i]n instructing the jury, *the judge* shall not express an opinion[.]" (emphasis added). Our caselaw also holds that "[a] *trial judge* is required by N.C.G.S. § 15A-1231 and N.C.G.S. § 15A-1232 to instruct the jury on the law arising on the evidence." *State v. Bogle*, 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989) (emphasis added). Said differently, "[a] *judge* has the obligation to instruct the jury on every substantive feature of the case." *State v. Smith*, 360 N.C. 341, 347, 626 S.E.2d 258, 261 (citations and quotation marks omitted) (emphasis added). Our Supreme Court has directed "the *members of the trial bench* to refrain from avoiding the *necessity* for instructing the jury[.]" *State v. Fletcher*, 370 N.C. 313, 326 n. 6, 807 S.E.2d 528, 538 n. 6 (2017) (emphasis added). One of the instructions delegated to the clerk described the State's burden of proof. This Court has previously held that there is "a duty upon *the presiding judge* to instruct the jury as to the burden of proof upon each issue arising upon the pleadings." *State v. Tyson*, 195 N.C. App. 327, 335, 672 S.E.2d 700, 706 (2009) (citation omitted) (emphasis added). Simply put, the error in this case is manifest.

## D. Prejudice

Whether the trial court's error amounts to prejudicial error is the more difficult question posed by this appeal. Complicating matters is the importance that the trial judge give the jury charge—and the significance of the particular delegated instructions. As we have recently recognized, "[t]he jury charge is one of the most

critical parts of a criminal trial. *The trial court's duty is momentous*: to deliver a clear instruction on the law arising from all the evidence presented, and to do so in such a manner as to assist the jury in understanding the case and in reaching the correct verdict." *State v. Corbett*, ___ N.C. App. ___, ___, 839 S.E.2d 361, ___ (2020) (citations and quotation marks omitted) (emphasis added); *see also Carter v. Kentucky*, 450 U.S. 288, 303, 67 L. Ed. 2d 241, 252 (1981) (recognizing the "unique power of the jury instruction" in protecting criminal defendants' constitutional rights).

Several of the jury instructions that the trial judge delegated to the clerk are so foundational as to be given in virtually every case. For example, our Supreme Court has emphasized that "[t]he rule as to the burden of proof is important and indispensable in the administration of justice, and constitutes a substantial right of the party upon whose adversary the burden rests. It should, therefore, be jealously guarded and rigidly enforced by the courts." *State v. Falkner*, 182 N.C. 793, 798, 108 S.E. 756, 758 (1921). The necessity that the jury understand this burden is beyond any serious dispute. *See, e.g., Hope v. Cartledge*, 857 F.3d 518, 527 (4th Cir. 2017) (observing that "the Supreme Court [of the United States has] recognized the importance of accurate, explicit, and complete jury instructions where laymen are required to understand the government's burden"). Further, at least one of the instructions given by the clerk in this case was required to vindicate Defendant's constitutional rights. *See Carter*, 450 U.S. at 303, 67 L. Ed. 2d at 252 (holding that

when a defendant declines to testify and requests an instruction on that point, a trial judge must give such an instruction under the Fifth Amendment, as "[a] trial judge has a powerful tool at his disposal to protect the constitutional privilege—the jury instruction—and he has an affirmative constitutional obligation to use that tool when a defendant seeks its employment."). The fact that some of the instructions given by the clerk may not have been strictly required in all cases[2] does not deprive them of their value to the jury. *See, e.g., Taylor v. Kentucky*, 436 U.S. 478, 484, 56 L. Ed. 2d 468, 474 (1978) ("While the legal scholar may understand that the presumption of innocence and the prosecution's burden of proof are logically similar, the ordinary citizen well may draw significant additional guidance from an instruction on the presumption of innocence.").

Although the procedure employed by the trial court in this case carries with it a high risk of prejudice, we nonetheless hold that Defendant has not shown prejudicial error in this case. We agree with Defendant that the delegation of certain instructions to the clerk could possibly have lead jurors to "reasonably infer . . . that the trial judge's action intimated an opinion" that those instructions were of

---

[2] Although "[t]he principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law[,]" *Coffin v. United States*, 156 U.S. 432, 453, 39 L. Ed. 481, 491, (1895), the failure to give an instruction on that presumption does not amount to reversible error "when the trial court has clearly defined the offense and placed the burden of proof beyond a reasonable doubt upon the state to find the defendant guilty." *State v. Allah*, 168 N.C. App. 190, 195, 607 S.E.2d 311, 315 (2005) (citations omitted).

comparatively lesser importance than those rendered by the judge. *Blackstock*, 314 N.C. at 236, 333 S.E.2d at 248 (citation omitted). But Defendant has not shown that the inferred expression of that opinion "had a prejudicial effect on the result of the trial" necessary to elevate it from a harmless error to a prejudicial one. *Larrimore*, 340 N.C. at 155, 456 S.E.2d at 808 (citation and quotation marks omitted).

Mindful of the totality of the circumstances test applicable in this case, *Blackstock*, 314 N.C. at 236, 333 S.E.2d at 248, various portions of the record undercut a conclusion of prejudicial effect. First, the trial judge instructed the jury "the clerk is going to help me to read some of these instructions. So listen to the instructions as she is reading them." We "presume[] that jurors follow the trial court's instructions," *State v. Steen*, 352 N.C. 227, 249, 536 S.E.2d 1, 14 (2000) (citation omitted), and therefore presume that the jury did, in fact, listen to the jury instructions read to them by the clerk. Second, the trial judge interjected several times to correct several misstatements of the instructions by the clerk, conveying a belief by the trial judge of the importance that the instructions read by the clerk be accurate and complete. Third, the jury reached its verdict without seeking clarification from the trial court as to any issue or instruction, indicating that the instructions were properly understood. Lastly, when asked by the judge if he had "any additions, corrections [or] comments on the instructions" after they were given, Defendant's counsel replied "No, Your Honor. Thank you[,]" indicating Defendant's

apparent satisfaction with the instructions and the manner in which they were rendered. Under these circumstances, and absent more, we cannot conclude that the trial court's error "had a prejudicial effect on the result of the trial." *Larrimore*, 340 N.C. at 155, 456 S.E.2d at 808.

## E. *Defendant's MAR*

In the MAR filed with this Court, Defendant argues that the trial court erred in calculating his prior record level. Specifically, he contends that the dates of his stipulated prior convictions as listed on his prior record worksheet conflict with the dates on which those convictions were actually entered. Because the judgments attached to Defendant's MAR show that several convictions were originally entered on the same date, rather than different dates as listed on the worksheet, Defendant asserts that some of those convictions should not have been used to elevate his prior record level from III to IV. *See* N.C. Gen. Stat. § 15A-1340.14(d) (2019) (providing that only the most severe conviction entered in a single session of superior court may be used to calculate a defendant's prior record level). He requests that we grant the MAR and remand for resentencing or, in the alternative, remand the MAR to the trial court for an evidentiary hearing. The State asks that we either dismiss the MAR without prejudice to Defendant re-filing the motion with the trial court—as the documents attached in the MAR are not in the settled record on appeal—or deny the MAR on the merits.

We agree with the State that it is most appropriate to dismiss Defendant's MAR without prejudice to re-filing it with the trial court. The State does not concede that Defendant was not convicted of the crimes listed in his prior record level worksheet on the dates stated therein, and resolution of Defendant's MAR turns on a factual issue requiring the consideration of evidence outside the settled record on appeal. *See, e.g., State v. Verrier*, 173 N.C. App. 123, 132, 617 S.E.2d 675, 681 (2005) (dismissing a defendant's MAR without prejudice to re-filing it with the trial court, "[m]indful that it is more within the province of a trial court rather than an appellate court to make factual determinations"). The trial court is best equipped to hear Defendant's MAR and take additional evidence as necessary.

### III. <u>CONCLUSION</u>

The trial court, in allowing the clerk to read certain portions of the jury instructions, committed error. Such a procedure may readily give rise to prejudice, and, echoing our Supreme Court, "we urge the members of the trial bench to refrain from avoiding the necessity for instructing the jury[.]" *Fletcher*, 370 N.C. 313, 326 n. 6, 807 S.E.2d 528, 538 n. 6. We cannot overstate the importance that the trial judge— and not a clerk—fulfill the duty "to instruct the jury on every substantive feature of the case." *Smith*, 360 N.C. at 347, 626 S.E.2d at 261 (citations and quotation marks omitted). However, we hold that the error committed here was harmless and, as a

result, leave the judgments entered below undisturbed.  We also dismiss Defendant's MAR without prejudice so that he may re-file a motion with the trial court.

NO PREJUDICIAL ERROR; MOTION FOR APPROPRIATE RELIEF DISMISSED WITHOUT PREJUDICE.

Judges DIETZ and DILLON concur.